BRADSHAW V. DAVIS AND OTHERS.

Where no exceptions to the petition for an injunction and new trial appeared in the transcript, but the entry of judgment recited that "plaintiff's exception to "defendants' petition being by the parties submitted to the Court, and after ar-"gument of counsel, it is ordered that the same be overruled," this Court considered that no exception had been filed.

It is in general true, that where a petition does not show any good cause to entitle the party to relief, on the merits of his case, the objection may be taken by motion in arrest of judgment, or on error. But where the petition, as in this case, was in the nature of an application for a new trial, which was granted, without a question having been made as to the sufficiency of the petition, or the propriety of awarding the new trial, the case must stand, on appeal from the judgment upon the second trial, as an ordinary case of the grant of a new trial.

Where there is an agreement to receive cotton or other goods at a future day in payment of a precedent indebtedness on a note or account, a tender of the cotton or other goods within the time discharges the indebtedness, whether such tender be accepted or not; and the cotton or other goods immediately become the property of the creditor. But *quere*, if the debtor do not abandon the property, but continue to exercise acts of ownership over it?

It seems that where a tender is made, if the party to whom it is made object that it was not made in time, and make no further objection, but refuse to accept it, the tender will be taken *prima facie* to have been sufficient in amount.

See this case for circumstances under which it was considered that a verdict for the defendant on a plea of accord and satisfaction in specific property, which depended on a tender of the property and refusal to accept it, was sustained by the evidence.

Where a general demurrer to the answer was overruled, and the evidence disclosed a complete defence to the action, the Court declined to reverse the judgment on account of a substantial defect in the answer.

Error from Marshall. Action by James Bradshaw against the defendants in error, Wiley Davis, William G. Davis and John T. Davis, commenced Sept. 12th, 1844, on a sealed note of the defendants' for two hundred and eleven dollars and fifty cents, dated March 12th, 1842, and payable to the plaintiff on or before the 25th of December, next thereafter. Fall Term, 1844, answer filed, as follows, (after a general demurrer, and that they were not indebted,) And for further plea and answer, said defendants say that said plaintiff ought not to have and maintain his aforesaid action against them,

Bradshaw v. Davis.

because they say, that after the making and delivery of the promissory note referred to in plaintiff's petition, and before the commencement of this suit, to wit: at the Fall Term of the District Court held in and for the county of Nacogdoches, A. D., 1843, said plaintiff entered into a distinct, subsequent, independent and parol agreement with said defendants, for the payment of said sum of money in said promissory note mentioned and the interest thereon, by which said agreement the said defendants agreed to pay and deliver to said plaintiff, and the said plaintiff agreed to receive in payment of said sum of money and interest, baled cotton, at five dollars per hundred pounds, to be delivered at Richard G. Hale's gin, in the county of Nacogdoches; that afterwards to wit: after said parol agreement, and* demanded of the said plaintiff that said promissory note be then and there delivered up and cancelled, yet the said plaintiff, in violation of said parol agreement, then and there refused to receive said cotton so ready and offered to be delivered as aforesaid, and refused to deliver up said promissory note to be cancelled, and still refuses, though the said defendants left the said cotton at the said gin, in payment of said sum of money and interest, and have then and hitherto often requested said plaintiff to receive said cotton as aforesaid, and to deliver up and cancel said note.

Same Term, a general demurrer to the said plea was filed by the attorneys for the plaintiff, and continued on affidavit of the defendants. Spring Term, 1845, death of the plaintiff suggested, and *scire facias* ordered to his legal representatives. Fall Term, 1845, *alias scire facias* ordered and continued. Spring Term, 1847, *alias scire facias* ordered. Fall Term, 1847, *pluries scire facias* ordered, to Naomi Barton, Cherokee County, legal representative of James Bradshaw. *Scire facias* issued March 5th, 1848; no return. *Scire facias* issued August 5th, 1848; returned, Naomi Barton died before this was received, Sept. 5th, 1848. Fall Term, 1848, *alias scire facias* ordered, to representatives of Bradshaw,

* So written in the transcript of the record. REPS.

22

when known. *Scire facias* issued March 14th, 1849, to Nacogdoches County, to William Bradshaw to appear and become a party plaintiff in said action. Service acknowledged by William Bradshaw, administrator of James Bradshaw. Spring Term, 1849, James Bradshaw made himself party plaintiff, and cause continued. Fall Term, 1849, " came the " plaintiff by his attorney, and it appearing to the satisfaction " of the Court that the defendants have been regularly served " with process herein and not appearing when called, on mo- " tion ; it is therefore considered by the Court that the plain- " tiff recover of the defendant," &c., (the amount of the note and interest.)

On the 23rd of October, 1850, the defendants filed, in same Court, their petition for a new trial, and for an injunction to stay the execution of the judgment. It alleged the making of the note, the institution of the suit, the facts stated in the answer thereto ; that they employed counsel, naming him ; that they took depositions to prove their answer ; that before the suit could be tried Bradshaw died ; that they were informed by their counsel that the suit would have to be revived in the name of the administrator, and that they would have to be notified of such revival, and laboring under the advice of counsel and never hearing anything of the matter, they moved to ——— county, and afterwards to Rusk, believing that the administrator, if ever there was one, had abandoned the unjust suit, and thus the matter slumbered, &c. ; and they aver that they were wholly deceived, and they charge that the said Bradshaw and his attorney, finding your petitioners unrepresented, fraudulently took judgment against them by default ; and they further charge that the said judgment was obtained by fraud, and all information of the prosecution of said suit carefully withheld from them until the judgment was rendered ; that execution was issued, &c. ; that as a reason for not suing out this injunction within six months, they were not apprised of the judgment until August 24th, 1850 ; the execution being withheld with a view to suffer the six months to elapse.

The plaintiff moved " to dismiss the injunction," &c., for objections to the injunction bond. At Spring Term, 1851, " This coming on to be heard upon the defendant's motion to " dismiss this cause from the docket," (no such motion in the " transcript,) "and the same being seen and considered by the " Court, it is ordered by said Court that the same be overruled ; " and said cause coming on to be heard upon defendant's mo- " tion to dissolve the injunction in this cause, and the same " being duly seen and considered by the Court, it is ordered " that said injunction be dissolved, and that plaintiff be re- " quired to give a refunding bond and cause continued. Re- " funding bond given."

At the Fall Term, 1851, " This cause coming on to be " heard upon the defendants' petition for an injunction, and " to set aside the judgment heretofore rendered in this cause " and grant a new trial being seen and considered, plaintiff's " exceptions to defendants' petition being by the parties sub- " mitted to the Court, and after argument of counsel, it is or- " dered that the same be overruled, to which plaintiff excepts. " It is further ordered by the Court that the judgment ren- " dered on the 7th day of January, 1850, for the sum of three " hundred and thirteen dollars and sixty-three cents be set " aside, and that a new trial be granted herein upon the pay- " ment of all costs by the defendants."

The terms were immediately complied with, and the cause went to trial ; the demurrer to the defendants' answer was overruled, and there was a verdict for defendants ; judgment accordingly, and motion for new trial overruled.

There was a bill of exceptions and statement of facts, which commenced with the recital that the petition for an injunction and the plaintiff's exceptions thereto, came on to be heard, whereupon the exceptions were overruled and a new trial was granted in the original cause. The testimony as to the ac- cord and satisfaction, was as follows :

Deposition of James Davis, that after the note was given, Bradshaw agreed to take cotton at five dollars per hundred

pounds, to be delivered at Mr. Hale's gin, near Douglass, in
Nacogdoches county ; did not know when the agreement was
made ; his father sent him to tell Bradshaw that the cotton
was ready at Mr. Hale's gin; Bradshaw remarked that would
do very well, it was close to where he lived and would answer
him as well as the money, turned to some gentlemen and asked
if that was not very cheap, and remarked that he had good
luck in Texas, that he had got the cotton near where he owed
a debt, and that it would answer him as well as money, and
that he thought he was doing well to get it; this conversation
occurred in Nacogdoches, about Christmas, 1843 ; there was
no time when the cotton was to be delivered ; it was to be
picked cotton, at five dollars per hundred weight; did not
know when it was to be delivered ; the cotton was first rate ;
he hauled it to the gin ; it remained at the gin for Mr. Brad-
shaw twelve months or more; were nine or ten bales or eleven;
part of the cotton at the gin at present; does not know that
any person received any of the cotton for Mr. Bradshaw ; de-
position taken 30th December, 1844.

Deposition of R. G. Hale, that John Davis offered James
Bradshaw nine bales of cotton already baled and two more to
be baled as part payment of a note that James Bradshaw
held against the defendants; it was at my gin house in May,
1844; the cotton was of fine quality ; the cotton was deli-
vered at my gin for James Bradshaw and would have been
ready according to Bradshaw's expectation if my gin had
not got broken ; the cotton was not accepted by Bradshaw ;
he said it had not been delivered according to contract, and
the price of cotton had fallen, he did not consider himself bound
to take it, that he would rather have a negro in its place;
the defendants left the cotton at witness's house, in his pos-
session, and told him to let Bradshaw have it at five cents
per pound and have their note credited with the amount ; he
offered it to Bradshaw, who replied he was too smart to take
it, for he intended to have a negro for the debt; Bradshaw
told him that he had sold the cotton he was to get from Da-

vis, at three cents per pound before he bought it, that he had filled the place otherwise, and now he was determined to have one of their negroes for the debt; the cotton offered by John T. Davis to Bradshaw was in weight five thousand one hundred and eighty-four pounds, picked cotton.

The Court, among other things, instructed the jury, that if they believed the defendants delivered the cotton according to their contract and James Bradshaw refused to receive it, such tender and refusal constituted a good defence to this action.

The action of the Court below " in overruling exceptions to the petition for injunction," " in granting to the original defendants, upon their petition, a new trial," " in overruling exceptions to the plea in the nature of a plea of accord and satisfaction," " in overruling appellant's motion for a new trial," was assigned for error, and it was also assigned for error, that " the final judgment is erroneous in this, it in effect dismisses the original suit."

*D. S. Jennings,* for plaintiff in error. The District Court erred in overruling the exceptions of plaintiff in error to the injunction bill of defendants in error.

1st. Because defendants had a plain, adequate, and unembarrassed remedy at law by writ of error. (1 Tex. R. 42; 1 Johns. Cas. 455; Story's Eq. J. 180.)

2nd. Because the defendants did not use sufficient diligence in defending themselves at law, their only apology for their extraordinary laches is their attorney's ignorance of law, and his absence when the case was called. Had he chanced to know the law, or happened to have been present when judgment was rendered, even this flimsy excuse could not have been set up. (Floyd v. Jane, 6 Johns. Ch. R. 479; 1 Id. 465.)

3rd. Defendants do not disclose in their injunction bill, a valid legal defence to the action at law, for the doctrine is well settled by the cases ancient and modern, English and American, that an executory accord is no defence. In Paytois case, 9 Coke, 79, it was held that where part of the ac-

cord had been executed, tender of the residue, would not be sufficient to make it a bar to the action, but there must be an acceptance in satisfaction.  Cited and approved, 2 H. Bla. 317.   In accordance herewith, it was decided by the Supreme Court, North Carolina, (1 Dev. and Batt. 565, 1 U. S. Dig. 43,) " That the plea must state what was given in satisfaction, al-" lege delivery, and expressly aver an acceptance in satisfac-" tion and discharge."   By the Supreme Court of Indiana it was held that, " An accord cannot in any case be pleaded in bar, unless it be executed."   (7 Blackf. 582; 7 U. S. Dig. 12.) So in Kentucky it was held " That the plea of accord, &c., must show that the plaintiff received something valuable."  (3 J. J. Marsh. 497; 1 U. S. Dig. 43.)   In New York it was decided that to an action of debt on a bond for the payment of money, a plea averring an agreement by the obligee to accept a surrender of land mortgaged as collateral security, and a tender of performance by defendant, is not a good bar.   (6 Wend. R. 390; 1 U. S. Dig. 43.)   They say, " An accord must be executed."   In 5 N. Hamp. 136, (1 U. S. Dig. 42,) the Court reiterating the language of Paytois case, say " an " accord and satisfaction to constitute a legal bar to the action, " must be full, perfect and complete."   These epithets refer to the satisfaction.   It is needless to add that these authorities, utterly demolish defendants' special answer in the nature of a plea of accord and satisfaction, and leave them without a defence at law, or ground for invoking the aid of a Court of Equity.

4th.  The mere plea of tender is not a ground upon which the aid of a Court of Equity can be invoked.   Even at law, such pleas are considered *stricti juris*, and nothing will be presumed in their favor.  (3 U. S. Dig. 514.)

The Court erred in setting aside the judgment and granting a new trial.   It is well settled that a Court at law has no control over its own judgments after the Term at which they are rendered.   It is equally clear that a Court of Equity cannot set aside a judgment or grant a new trial in a case at law. (6 Johns. Ch. R. 479.)

The Court erred in overruling the motion of plaintiff in error for a new trial. The evidence did not show a tender of enough cotton picked and baled to pay the debt and the interest that had accrued. It is said to be a well known rule, that the defendant must take care at his peril to tender enough. (Boyden v. Moore, 5 Mass. R. 365; 3 U. S. Dig. 514.) This rule applies with greater force to tenders of property than to those of money, for the reason that they are held to extinguish the demand.

*W. B. Turner*, for defendants in error. Mode of revival. (Hart. Dig. Art. 784, 697.)

Injunction shall not be granted after six months, unless, &c. In either event may be granted in two years. (Hart. Dig. Art. 1599.)

Judgment good for one year without revival if *fi fa* issued. (Hart. Dig. Art. 1621, 2378.)

Supersedeas or bill of review granted within two years good. (Hart. Dig. Art. 2385.) Where injunction dissolved petition stands over for trial on the merits. (Id. Art. 1604.)

From the misconception of counsel, the remote distance of the defendant, his infirmities and his having a meritorious defence, the Court grant the application upon the payment of costs. (3 Caine's R. 102, Schenck v. Woolsey.)

If the petition for injunction had been brought within the six months, there could be no doubt as to the right of the petitioner to a rehearing. If then he brings himself by his petition within the exception as laid down in Hart. Dig. Art. 1599, his right is equally clear to a rehearing. The above authority recognizes a misconception of counsel as an exception to the general rule. 2nd. Defendants living in a different county. 3rd. Defendants having a meritorious defence.

Our own statute makes any act of plaintiff which amounts to a fraud an exception to the general rule. The circumstances under which plaintiff took his judgment argues anything but fairness upon his part, finding defendants absent

under a misconception of their rights, their counsel absent, takes a judgment by default over a plea showing substantial merits, which upon the trial was fully sustained by the depositions of witnesses then on file. The intentional delay in the issuance of the execution after judgment, &c., shows but too clear the *mal* intention of the plaintiff.

It is charged that the Court erred in overruling plaintiff's exceptions to defendants' plea of accord and satisfaction. In support of the ruling of the Court in this particular refer to Smith v. Sherwood, 2nd vol. of Texas Rep. p. 460. An offer to deliver and a refusal to receive are a sufficient compliance with a promise to deliver specific articles. In further support of this principle, as ruled in the American Courts, refer to 3rd vol. of Johns. Cases, p. 243, Coit and Woolsey v. Houston, opinion delivered by Thompson, Livingston and Kent.

WHEELER, J. The grounds relied on for a reversal of the judgment are, 1st. That the defendants' petition for a new trial did not disclose sufficient legal grounds to entitle them to the relief sought. 2nd. That the Court erred in overruling the plaintiff's exceptions to the defendants' plea of accord and satisfaction; and in refusing his application for a new trial.

In answer to the first of these grounds, it is to be observed, that the sufficiency of the petition was not brought in question in the Court below. The exceptions were confined to the supposed insufficiency of the bond, in the several respects indicated; but the legal sufficiency of the petition does not appear to have been questioned. Had there been exceptions to the petition for the causes now urged; that is, that it did not show such diligence as the law requires in defending the suit, or in instituting proceedings to obtain a new trial; or that by its averments it appeared that the defendant had his remedy to avoid the judgment by a writ of error, a very different case would have been presented. Or, if there had been a general demurrer to the petition overruled, it would have become necessary to revise the petition on the merits, and to

inquire whether it sufficiently appeared by its averments, that the defendant had a good defence to the action. But the defendant, by his silence, having acquiesced in the sufficiency of the petition, and the original cause having been re-tried upon its merits, it is now too late to question the legal sufficiency of the petition, or application on which the new trial was awarded.

It is in general true, that where a petition does not show good cause to entitle the party to relief, on the merits of his case, the objection may be taken by motion in arrest of judgment, or on error. But where the petition, as in this case, was in the nature of an application for a new trial, which was granted, without a question having been made as to the sufficiency of the petition, or the propriety of awarding the new trial, the case must stand on appeal from the judgment upon the second trial, as an ordinary case of the grant of a new trial.

The judgment of the Court overruling the plaintiff's exceptions to the defendants' plea of accord and satisfaction, presents a graver question and one not free from difficulty.

"It is laid down as a general principle, that accord without "satisfaction is no bar to an action for, or any extinguishment "of a debt; that is, that the accord or promise to confer sat- "isfaction must be fully and actually executed and accepted, "in order to afford a defence to such action. But this pro- "position requires much explanation.

"Where the accord is to do a thing in satisfaction at a "future day, and the act is accordingly done and accepted at "that time, and is in law a sufficient satisfaction, no doubt "the original demand will not furnish a right to sue thereon "after the day on which the satisfaction was rendered, al- "though at the time of the accord, the satisfaction was ex- "ecutory. In this instance there is accord with satisfaction, "and the claim is satisfied and extinguished.

"If the accord, or agreement that satisfaction should be "rendered by the defendant, or a third person, at a future

" day, be not founded on a new consideration, and be not so " far binding on the debtor as to afford a fresh right of action " to the creditor for its non-performance, an action lies on the " original demand, even before the time prescribed for ren- " dering satisfaction. Many of the old cases upon the subject " of accord without satisfaction were expressly decided on this " ground." (Chit. on Con. 760 to 762, 7th Am. from 3d London Edit.)

In the earliest cases on this subject it was held that " Ac- " ceptance of the thing agreed on in these accords is the only " material thing to make them binding." (Hob. 178; 5 Mod. 86.) Yet in the time of Lord Raymond, it was said, " Of late " it hath been held, that upon mutual promises an action lies, " and consequently, there being equal remedy on both sides, " an accord may be pleaded without execution, as well as an " arbitrament." (Raym. 450; 2 Jones, 158; Tom. L. D. " Accord.")

The general principle, however, undoubtedly is, as stated by Mr. Chitty, that an accord not executed is no bar to a pre-existing demand. (3 Johns. Cas. 246, 256; 5 Johns. R. 386; 16 Id. 86; 6 Wend. R. 390.) " It is well settled (says Green-leaf,) " that an accord, alone, not executed, is no bar to an " action for a pre-existing demand. And the rule is equally " clear, that the person who is to be discharged is bound to do " the act which is to discharge him; and not the other party." (2 Greenl. Ev. Sec. 30.) The same learned jurist adds: " Whether an accord, with a tender of satisfaction, is suffi- " cient, without acceptance, is a point upon which the author- " ities are not agreed. It is, however, perfectly clear, that a " mere agreement to accept a less sum in composition of a " debt, is not binding, and cannot be set up in bar of an " action upon the original contract." " But whether, where " the agreement is for the performance of some collateral act, " and is upon sufficient consideration, a tender of performance " is equivalent to a satisfaction, seems still to be an open " question; though the weight of authority is in the affirm-

Bradshaw v. Davis.

" ative. In one case, which was very fully considered, it was
" laid down as a rule, warranted by the authorities, that a
" contract or agreement, which will afford a complete recom-
" pense to a party for an original demand, ought to be re-
" ceived, as a substitute and satisfaction for such demand, and
" is sufficient evidence to support a plea of accord and satis-
" faction. (Coit v. Houston, 3 Johns. Cas. 249.) Therefore,
" where the holder of a promissory note, agreed in writing
" with the indorser, to receive payment in coals at a stipu-
" lated price, and they were tendered accordingly, but refused,
" the agreement and tender were held to be a sufficient accord
" and satisfaction to bar an action on the the note, (same case.)
" So, where a man's creditors agreed to take a composition
" on their respective debts, to be secured partly by accept-
" ances of a third person, and partly by his own notes, and to
" execute a composition deed, containing a clause of release ;
" it was held by Lord Ellenborough, that an action for the origi-
" nal debt could not be maintained by a creditor, who had
" promised to come in under the agreement, to whom the ac-
" ceptances and notes were regularly tendered, and who re-
" fused to execute the composition deed, after it had been ex-
" ecuted by all the other creditors ; the learned Judge remark-
" ing, that a party should not be permitted to say there is no
" satisfaction, to whom satisfaction has been tendered, ac-
" cording to the terms of the accord. (Bradley v. Gregory, 2
" Campb. 383.) But it has since been held, in this country,
" that a readiness to perform a collateral agreement is not to
" be taken for a performance, or as the satisfaction required
" by law. Russell v. Lytle, 6 Wend. 390." (2 Greenl. Ev.
Sec. 31.) Of this last case, Russell v. Lytle, it is added, in
the note, " But in this case, the decision of the same Court in
" Coit v. Houston, many years before, was not cited or ad-
" verted to, and the question was decided upon the earliest
" authorities. Yet in several of these, the reason why an ac-
" cord without satisfaction is not binding, is stated to be, that
" the plaintiff has no remedy upon the accord ; thus tacitly

" seeming to admit that, where there is such a remedy, the
" accord with a tender of satisfaction is sufficient. 1 Roll,
" Ab. Tit. ACCORD, pl. 11, 12, 13 ; Allen v. Harris, 1 Ld.
" Raym. 122 ; Brooke, Ab. Tit. ACCORD, &c., pl. 6 ; 16 Ed. 4,
" 8, pl. 6.   So in Lyman v. Bruce, 2 H. Bl. 317.   See, how-
" ever, Hawley v. Foote, 19 Wend. 516, where an agreement
" to accept a collateral thing in satisfaction, with a tender and
" refusal, was held not a good bar."   (Ib. n. 4, 2nd Edit.)

In Story on Contracts, (Sec. 982 b. 3d Edit.) it is said,
" Whether an accord, with an unaccepted tender of satisfac-
" tion, be a sufficient defence, does not seem to be settled.   If
" the accord be to accept a lesser sum than a debt, in satis-
" faction of it, there must be an actual acceptance in order to
" constitute a defence to the debt, and a mere tender is insuf-
" ficient.   Thus, an agreement by creditors to accept five shil-
" lings six pence in the pound, in full satisfaction of their
" claims, was held to create no bar to an action for the full
" debt, there being no consideration to support the agreement.
" But where there is a sufficient consideration to support the
" agreement, it seems that a tender, though unaccepted, would
" be a bar to an action.   So, also, where a different mode of
" payment from that received by the original claim is substi-
" tuted for it by agreement, a tender according to such agree-
" ment will be sufficient, if it appear to have been a complete
" satisfaction."   And Coit v. Houston, and other cases which
will not be found so fully to support the text as does that case,
are cited.

The law upon this subject, is thus left by the authorities, in
an unsettled and perplexing state of uncertainty and embar-
rassment.   On principle, however, it seems to us, that the
reason and equity of the case support the doctrine stated in
the extract taken from the text of Story, and in favor of which
Greenleaf thinks there is the weight of authority.   If the ac-
cord is by a valid agreement which will afford a remedy to
compel its execution, it is difficult to perceive why a tender of
performance should not have the same effect to discharge the

contract in that case as in any other. Yet the case of Coit v.
Houston, relied on by counsel for the appellee in this case,
appears to be the leading and principal case referred to in the
authorities to which we have access, which fully supports that
doctrine. That case was decided by a very learned Court,
and, as remarked by Professor Greenleaf, was very fully con-
sidered, the four Judges who participated in the decision each
giving his reasons at length. And though Radcliff, J. dis-
sented from the judgment, he fully agreed with his brethren
that the accord was a valid and binding agreement, and that,
for the purpose of effectuating it, " a tender and refusal would
" be equivalent to an actual performance, and entitle the ven-
" dor to the price, and the vendee to possession of the property
" which was the subject of the contract; that an omission or
" neglect to accept the article when tendered, is also equiva-
" lent to a refusal, and will subject the party in default to the
" like consequences." These (he said) appeared to him to be
" plain principles founded in equity, and supported both by
" the civil law and the authorities in our own law." And he
rested his dissent on the ground of the want of legal tender;
but more especially on the ground that the debtor, by after-
wards selling the coal, the subject of the tender, had waived
his right to demand the full price for it, and of consequence to
have it adjudged a full satisfaction for the debt. On this
point, the learned Judge used the following language, which
I quote, as pertinent to the case we are considering and as ex-
pressive of what seems to me the true view of this branch of
the subject. He said: " I consider it as equally clear, that
" by force of the contract alone, which was merely executory,
" the property was not changed; but on making the tender,
" if it was competent (that is, a legal tender,) the defendant
" had an election to consider it changed, and to become the
" bailee for the plaintiffs, or to affirm the property to continue
" in himself, and demand the difference between its actual
" value and the price agreed on. If he elected to consider
" the property changed, it would remain in his possession at

" the charge and risk of the plaintiffs, and subject to their di-
" rection. He could not, in the character of bailee, dispose of
" it for his own benefit. The moment he did so, he treated it
" as his own, and affirmed the property to continue in him-
" self; and could only demand the difference between the value
" and the price which was stipulated." He proceeds to show
that this is in accordance with the rule of the civil law; and
concludes that, " the defendant by the sale and disposition of
" the coal subsequent to the tender, determined his election to
" consider the property as his own, and cannot afterwards de-
" mand the full price for which it was sold to the plaintiff.
" He cannot retain the whole property, and at the same time
" demand the whole price. He is entitled to recover, in
" damages, a sum equal to the difference in value only." (3
Johns. Cas. 255-6.) The Court do not appear to have dis-
agreed as to the legal principles involved in the discussion;
but only as to their application to the facts of the caes then
before them. The majority were of opinion that there was
evidence of a tender, or what was equivalent to a tender;
which amounted to a performance of the accord, or new agree-
ment on the part of the defendant, and was a bar to plaintiff's
right of action on the original contract.

Mr. Justice Thompson, after reviewing the authorities on
the subject of this defence, concluded by presenting a clear
exposition of the law on the subject of the sufficiency and effect
of the tender under the new agreement. " Although I do
" not think it necessary, (he said,) for the purpose of deter-
" mining the present question, to say that, in all cases, a ten-
" der and refusal shall be equivalent to actual acceptance; yet
" I think it a rule founded in good sense, and one that is not
" contradicted by the general tenor of the authorities. Whe-
" ther in this case there was a tender and refusal, were ques-
" tions for the determination of the jury. And even admit-
" ting there was no actual tender, it would not, in my judg-
" ment, alter the result. The party to whom it is to be made,
" has, undoubtedly, a right to waive that ceremony, and I

" think the circumstances here are fully sufficient to warrant
" such an inference. When it is said that a tender and refusal
" are equivalent to an actual performance, it is not to be un-
" derstood that it amounts to an absolute discharge of the
" party from liability on the contract. In the case of a ten-
" der of money, it only discharges the subsequent interest and
" costs. And in the case of goods, like the present, it only
" exonerates the party from responsibility for their safe keep-
" ing. But as long as he continues in the possession of the
" goods, he will be bound to deliver them on demand. And
" if he should dispose of them, he would answer for the avails.
" On the whole, I think it a rule fully warranted by the au-
" thorities, that a contract or agreement, which will afford a
" complete recompense to a party for an original demand,
" ought to be received, as a substitute and satisfaction for such
" demand, and is sufficient to support a plea of accord and
" satisfaction. This appears to me to be a rule founded on
" sound principles, and one calculated for the furtherance of
" justice. In the present case, the plaintiff's remedy must be
" upon the agreement for the sale of the coal, in which case
" complete justice can be dispensed, according to the true in-
" tent and meaning of the parties." (Id. 248, 249.)

Mr. Justice Livingston rested his opinion on substantially
the same ground, that the acts of the parties were equivalent
to a tender, and that that amounted to a performance of the
new agreement on the part of the defendant. And he sup-
ported his opinion by reasons and principles drawn from both
the Civil and Common Law authorities.

Kent, J., was of opinion that, as the coal was ready to be
delivered to the plaintiffs, in pursuance of the agreement
which they had accepted ; as the defendant had repeatedly of-
fered the coal to the plaintiffs, who at one time said they would
call the next morning and look at the coal, and at another that
they would call and bring it away and send a person to ex-
amine it ; " from these facts, the jury might infer that the de-
" fendant had performed the agreement upon his part, by an

" acceptance on the part of the plaintiffs, and it may be held
" that the plaintiffs were properly concluded or estopped
" by their own declarations made at the time of the offer, and
" their act in pursuance thereof, from denying an acceptance
" of the coal." In the view he took of the case, the defendant
became trustee to the plaintiffs; and the acts of the parties
were sufficient to give the defendant a right to the note sued
on, for the discharge of which the accord was made, and
consequently to bar any action the plaintiffs might bring on
the note. (Id. 257, 258.)

I have drawn thus largely from the opinions of the eminent
Judges who decided the case of Coit v. Houston, because of
the conflict of authorities on the question, and its importance
as affecting business transactions of common occurrence; and
because, they appear to me to contain a clear elucidation of
the true principles on which the law, on this perplexed question,
should be settled by this Court, as well as the best commen-
tary I can give upon the law as directly applicable to the facts
of this case. The only material difference between the facts
in this case and in the case of Coit v. Houston, as respects
the legal principles determined by the Court in that case, is,
that it does not appear what disposition was finally made of
the cotton, the subject matter of the tender. It does ap-
pear that two of the defendants, Wiley and William Davis,
had cotton baled at the gin where this cotton was delivered,
and about the same time, which they removed from the gin;
but the cotton tendered to Bradshaw was by the other defend-
ant, John Davis, and it is in evidence that some of it remain-
ed at the gin for a year or more; so that it could not have been
the cotton which was ginned for and removed by the other
defendants. It does not appear that the cotton delivered for
Bradshaw was used or disposed of by the defendants; or that
by any act of theirs, they became responsible to the plaintiff
for its value. And this disembarrasses the present case of the
question on which the Court were divided in the case of Coit
v. Houston. For, supposing the tender to have been admit-

ted, the difference of opinion there was as to what should be the effect of the subsequent sale of the coal by the defendant. On that question, in our practice, there could be, it would seem, no difference of opinion. If it had appeared that the defendants after having made the tender, had appropriated the cotton to their own use, and thereby elected to affirm the property to remain in themselves, as in the case of the coal, that, on equitable grounds, must have been held an answer to the plea of accord and satisfaction. Clearly, they could, in equity and justice, have claimed no more than an abatement of the debt due upon the original contract, in a sum equal to its reduced value below the price at which the plaintiff had contracted to receive it; or the actual damage they had sustained by reason of his refusal to receive. For it would be plainly inequitable and unjust to permit the defendant to retain the whole property, and at the same time demand the whole price. On the other hand, if the property had depreciated in value and the defendant had sustained injury and loss by reason of the refusal of the plaintiff to receive it, when tendered in accordance with his agreement, it would be equally inequitable and unjust to throw such loss upon the defendant, who had performed the agreement in good faith on his part. And in our practice, there could be no technical or legal difficulty in the way of adjusting and settling the respective rights of the parties growing out of the contract, so as to dispense complete justice in one action.

But in the present case it does not appear that the defendants elected to consider the property as remaining in themselves. They did not retain the possession of the property, but left it, as appears by the evidence, at the gin, where by the agreement it was to be delivered, and where it remained in the care of a third person, who became bailee for the plaintiff and held the property subject to his risk. The defendants therefore appear to have made their election, as it was undoubtedly their right, to consider the property in the cotton as vested, by the delivery and tender, in the plaintiff; and they

23

do not appear afterwards to have done any act inconsistent with his right of property. Having rightfully parted with the title and possession of the property, for the benefit of the plaintiff and by his appointment, they cannot be responsible to him for its value. And it is the obvious dictate of reason and justice that they should be held discharged of all liability upon the contract. They must be so held in equity, if not in strictness of law; for if not a legal, there can be no question that these facts showed an equitable satisfaction and discharge of the debt. (Dewees v. Lockhart, 1 Tex. R. 535.)

We cannot doubt, that upon the facts, the defendants would have been entitled to relief in equity; and the facts which would afford a ground of equitable relief, must constitute a good defence in bar of the action. This, it is conceived, cannot admit of controversy, whatever opinion may be entertained of the sufficiency of the plea as a plea of accord and satisfaction.

It was insisted in argument, that the verdict was not warranted by the evidence; in that the evidence did not show enough cotton tendered to satisfy the debt. There certainly was more than enough cotton delivered at the gin. The weight of the cotton baled was not stated by the witnesses; but we think the jury were warranted by the evidence in finding that the quantity contracted for was delivered according to the contract. The plaintiff did not put his refusal to accept on the ground that there was not enough in quantity of the cotton. Had he done so, greater strictness of proof on that point might have been required.

The new agreement in this case was not the less valid and binding, as between the parties, because not in writing. It was to be performed within less than one year; and it is not pretended that it was within the operation of the statute of frauds. It was made subsequently to the written contract, and was a new, substituted agreement, for the discharge of the written contract; which it was competent to prove by parol testimony. (Chit. on Con. 107-111.)

In the case of Coit v. Houston it was, in effect, pleaded, that the defendant had tendered the coal and the plaintiffs refused to accept it; and further that he delivered, and the plaintiffs accepted the coal in full satisfaction of the note. Here the plea was simply, that the defendant delivered the cotton in pursuance of the agreement, and demanded the note; and that the plaintiff refused to receive the cotton or deliver up the note. In strictness, the plea, we think, should have shown, what the evidence does show, that the defendants elected to treat the cotton as the property of the plaintiff; that they left it in possession of the proper person as his bailee, and did not retain or resume the possession. These facts show them clearly entitled to demand the delivery up, or cancellation of the note; and consequently, not liable to the plaintiff in an action upon it; and the answer setting out these facts would have shown a good defence in bar of the action. But the defendant was not apprised, by special exceptions to the plea, of the ground of insufficiency relied on, or he might by amendment have obviated the objection. On the authority of Coit v. Houston, we might, perhaps, be warranted in holding the plea legally sufficient. But if the Court erred in holding the plea, on general demurrer, sufficient, it was probably by reason of the fault of the plaintiff in not pointing out wherein it was insufficient, and thus directing the attention of the Court to that point. The plaintiff cannot have been injured by the ruling, as he examined witness touching the disposition of the cotton, and had the full benefit of contesting the validity of the defence in evidence on the trial. And the ruling upon the sufficiency of the plea cannot now be material to the just disposition of the case on the merits; and, consequently cannot afford a ground for reversing the judgment. (McClenny v. Floyd, 10 Tex. R. 519.)

The justice of the case is clearly with the defendants. And we may conclude with the observations of Kent, J., in the case of Coit v. Houston, that, " The evidence tended to " the conclusion drawn by the jury; and as the Court of K.

"B. (2 Term R. 5) observed, on a like motion for a new trial,
"that, as it did not require much penetration to see where
"justice lay, they would not exercise their discretion in send-
"ing down the cause to be re-tried on a technical objection in
"point of law." (3 Johns. Cas. 258.)

We may suppose the Court below very properly to have
acted upon that view in refusing a new trial; and such an ex-
ercise of discretion would not afford a ground of reversal. And
on the whole, we are of opinion that there is no error in the
judgment and that it be affirmed.

Judgment affirmed.