## J. M. DAUGHERTY v. C. C. HERNDON.

### Decided November 16, 1901.

**1.—Accord and Satisfaction—Settlement in Full—Protest.**

The acceptance even under protest of less than is due as full payment of a disputed claim is a bar to recovery of the balance.

**2.—Same—Evidence Not Showing a Final Settlement.**

Evidence held to sustain a finding that an adjustment and payment on a contract for the delivery of cattle sold was not in reality a final settlement, because other cattle were still to be delivered and received.

**3.—Measure of Damages—Failure to Deliver Cattle—Market Value.**

The measure of damages for failure to deliver cattle sold is their market value at the time and place they were to be delivered, notwithstanding that the seller may have known they were to be shipped to another place.

Appeal from Taylor. Tried below before Hon. N. R. Lindsey.

*T. W. Daugherty, Fred Cockrell,* and *Hardwicke & Hardwicke,* for appellant.

*Beall & Beall* and *Legget & Kirby,* for appellee.

STEPHENS, Associate Justice.—Appellee undertook to deliver to appellant within 100 miles of Shreveport, La., during the month of April, 1898, 3750 Louisiana cattle, and tendered many more than that number for appellant to select from; but of these appellant accepted only 3296, and claimed damages for the shortage. On the other hand, appellee claimed that the cattle tendered met the requirements of the

contract, and brought this suit to recover damages for appellant's refusal to accept them, and also to recover $973, balance due for the cattle delivered.

The main defense interposed by appellant was that of accord and satisfaction, which was thus submitted to the jury in the charge of the court: "Now if you find that there was a dispute between plaintiff and defendant as to the amount, and that defendant, through his agent, tendered to plaintiff a certain amount in New York exchange, conditioned that the same was tendered only as a full and complete satisfaction of all plaintiff's claims against defendant, by reason of said cattle transaction, and if you further find that plaintiff, fully understanding that said amount was so tendered and conditioned on defendant's part, accepted with, or without protest, and retained the amount so tendered in New York exchange, you will find for the defendant."

The defense was overruled by the verdict and judgment appealed from, and the first error is assigned upon the ground that the verdict is without evidence to support it, and contrary to the admitted facts.

When the last delivery of cattle was made, Saturday, April 30, 1898, a statement was made out by one Dawson, who represented defendant, as a basis of settlement, in which appellee was charged $910 for failure to deliver 455 cattle, and $63 for excess in freight paid by appellant on cattle delivered more than 100 miles from Shreveport. This statement was submitted to appellee the next morning. After looking over it and objecting to the above items he finally accepted payment in New York exchange for the amount shown by the statement to be due him. His version of the transaction was thus given in his testimony: "After last shipment of April 30th, Dawson told me to come down to the hotel and we would settle the next morning; that shipment was made Saturday evening, and Dawson said he didn't have time to do anything then; next morning I went to the hotel, and he had the statement of account all figured out and I had nothing to say about it; I told him the statement was not correct, and I wanted the $910 he held out on the cattle, and he would not pay it, and I told him I would accept the draft of that date just as that much money, but not as a final settlement; I executed no release or acquittance. * * * Saturday evening before the last shipment went out, about 5 p. m., there were five cars of cattle coming in on railroad, and I told him to wait, and that there were more cattle, and he could get them; Dawson said: 'Never mind, I will take them to-morrow or next day;' I told him 'All right,' and the cattle came in all right; this was on Saturday evening; on Sunday evening, after I had seen him at the hotel Sunday morning, Dawson was at the stockyards and told me he would be out Monday morning; I went out Monday morning, shaped different ages in different pens, stayed on the fence until 10 or 11 o'clock waiting for him, then went to town and found Dawson had left town."

On cross examination he testified: "Dawson showed me the statement; I took and figured on it, told Dawson I thought he should not

charge me the $2 a head forfeit. * * * Dawson insisted it was nothing but right that I should allow Daugherty $2 per head; we were up there some little time and talked the matter over considerably. I will admit that this contract, the way Dawson figured it out there in April 30th statement, the number of head is correct; that growing out of that transaction that was all they owed me; Dawson offered to get me exchange for the amount shown to be due by the April 30th statement; I went with him to the bank to get the exchange. I knew he was going to get exchange for the amount of the statement; so knowing went to the bank with him; so knowing I took the exchange and realized on it."

On redirect examination he testified: "May 1st, after we went to bank I left the check laying there, and protested against taking it; Dawson says, 'That's all I am going to give you.' I says, 'I will take this money as what it is, but not in settlement.' This was in the presence of the banker. When we left the room at hotel to go to bank, I did not know he was going to the bank to get exchange in payment of all my demands; I knew he was going there to get exchange in payment of his figuring on April 30th statement. What I said was I knew he was going to the bank to get exchange to pay for the amount shown by the way he had it figured in the April 30th statement; to pay what he had figured out in that statement. When we left the room at hotel I told Dawson he should not deduct the $910. I told him all the time, but I only expected what he had figured; I did not accept that exchange in payment of my demands."

In response to the request of the jury to have appellee restate his testimony "as to whether he did or did not understand that when Dawson tendered him the New York exchange it was to be in full settlement of the transaction," he stated: "I knew that Dawson was tendering the exchange in full settlement of the transaction referred to in the statement of April 30th, but I expected him to get the cattle next morning."

This looks very much like an accord and satisfaction, for it seems to be well settled that the acceptance even under protest of less than is due in full payment of a disputed claim is a bar to recovery of the balance. Fuller v. Kemp, 138 N. Y., 231; 33 N. E. Rep., 1037; 20 Law. Rep. Ann., 785; Hussey v. Crass (Tenn.), 53 S. W. Rep., 983; Pullman v. City of St. Louis, 47 S. W. Rep., 563.

It is, however, insisted in behalf of appellee that a thorough analysis of the testimony warrants the conclusion that the alleged settlement made on the basis of the statement of April 30th was not understood by the parties thereto to be a final settlement; and to sustain this contention, in addition to the testimony quoted above and other circumstances, the following was read in evidence by appellee from the deposition of Dawson: "After the settlement was made (referring to the April 30th settlement) Herndon asked if he got up balance of cattle short on contract, would I receive them and allow the nine hundred

and odd dollars, and I told him if he got up three or ten cars without four or five days' time, and notify me through Crumbaugh, I would come and get them, or have Mr. Crumbaugh do it for me, and would pay him back the nine hundred and odd dollars and pay him the contract price for the cattle to be delivered under the special agreement. The next morning I saw Crumbaugh at the depot, and told him to see Herndon at once, and ascertain whether he was going to get up the five or ten cars, and to notify me immediately, and I would come or have him, Crumbaugh, receive them for me."

It thus appears that there was evidence tending to show that, while appellee accepted less than was due him for the cattle delivered April 30th, knowing that the same was offered as payment in full, he did so on the faith of the promise of Dawson to receive on Monday following, or within a short time thereafter, the remaining number of cattle called for in the contract, and to then pay the balance due for those delivered April 30th. There was certainly evidence tending to show that such promise was in the minds of the parties as the time, especially in view of what Dawson · said before and after the alleged settlement, to say nothing of the conduct of appellee in preparing to make a further delivery on Monday following. The evidence, therefore, warranted the jury in finding that what purported to be an adjustment of the controversy was in reality not a final settlement, because of the inherent feature looking to a readjustment in future of the very matter covered by the alleged settlement. Time was not of the essence of the original contract for the delivery of the cattle, which contained no clause of forfeiture or provision for liquidated damages for failure to deliver, as therein provided, "between the first and last days of April," and the demand of Dawson for a deduction of $2 per head for the number not delivered within that time seems to have been more arbitrary than just. When he had secured the acceptance by appellee of less than was due by promising, or at least with the understanding, not only that he would in effect extend the time of delivery, but also that he would pay the full contract price for those already delivered when the rest were delivered, he immediately turned his back upon the promise so made and treated the settlement so secured as a final disposition of the matters arising out of the contract. We are therefore not greatly surprised that the jury found in the transaction a feature which was inconsistent with a final settlement; nor are we prepared to hold after a very close examination of the record, that they reached a conclusion not at all warranted by the testimony.

At to the item of· $63 for overcharge of freight, we think the testimony of appellee warranted a finding that the true freight rate from Merouge, where six cars of cattle were accepted outside of the prescribed limit, was only $49.50, as represented by him, his testimony not being overcome by proof that more was charged and collected from appellant. This· conclusion disposes of the second assignment of error.

The charges quoted in assignment number 1a and the third assign-

ment were properly refused, because the matters were sufficiently covered by the main charge.

The charges quoted in the fourth, fifth, sixth, seventh, eighth, and eleventh assignments relate to issues eliminated by the verdict, and need not be further noticed.

There was no error in confining the testimony offered in support of appellant's plea in reconvention to the market value of the cattle at the time and place of delivery provided in the contract, notwithstanding appellee may have known that the cattle were to be shipped to the Indian Territory; which conclusion overrules the ninth assignment. The ruling complained of in the tenth assignment need not be considered, since it relates to an issue not now in the case.

This disposes of all the assignments except the twelfth, complaining of the charge for being "confusing and misleading," but we hardly think any injury could have resulted to appellant from the manner in which the charge complained of was expressed.

The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.