BERGMAN PRODUCE CO. v. BROWN.
(No. 691.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 12, 1914. Rehearing Denied Jan. 16, 1915.)

1. ACCORD AND SATISFACTION (§ 7*)—LIQUI-DATED DEMANDS—PAYMENT OF LESS SUM THAN DUE—EFFECT.

Payment of a less sum on the date fixed for payment of a liquidated demand, or after default, is not in satisfaction for the whole, though it was agreed that the payment should satisfy the whole, because there is no consideration for the discharge of the demand.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 46–58, 66, 94, 95; Dec. Dig. § 7;* Payment, Cent. Dig. § 133.]

2. ACCORD AND SATISFACTION (§ 1*)—AGREE-MENT CONSTITUTING.

An accord and satisfaction is the result of an agreement between creditor and debtor, and, where the creditor abates the claim against the debtor, it must appear that he understood, or should have understood, that he was so doing when receiving the consideration claimed, and an accord and satisfaction, to be enforceable, must be supported by a good or valuable consideration, however slight.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 1–13; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, First and Second Series, Accord and Satisfaction.]

3. ACCORD AND SATISFACTION (§ 10*)—COM-PROMISE AND SETTLEMENT (§ 6*)—DISPUTED CLAIMS—PAYMENT—CONSIDERATION.

Where there was a bona fide dispute as to the amount due on an account, a payment by the debtor of a less sum than that demanded by the creditor as a payment in full, and so accepted by the creditor, amounted to an accord and satisfaction supported by a consideration, barring recovery of any balance claimed by the creditor.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 67–74; Dec. Dig. § 10;* Compromise and Settlement, Cent. Dig. §§ 35–50; Dec. Dig. § 6.*]

4. ACCORD AND SATISFACTION (§ 10*)—COM-PROMISE AND SETTLEMENT (§ 6*)—DISPUTED CLAIMS—PAYMENT—CONSIDERATION.

Where there was a bona fide dispute as to the amount due on an account, and the debtor delivered to the creditor a check for a less sum than the amount demanded by the creditor, with the statement indorsed on it that it was in full payment, and the creditor accepted the check and cashed it, there was an accord and satisfaction.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 67–74; Dec. Dig. § 10;* Compromise and Settlement, Cent. Dig. §§ 35–50; Dec. Dig. § 6.*]

5. APPEAL AND ERROR (§ 934*)—FINDINGS—PRESUMPTIONS.

Where the evidence on an issue not submitted was practically undisputed, the facts in support of the judgment will, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, be deemed as found by the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781, 3782; Dec. Dig. § 934.*]

6. ACCORD AND SATISFACTION (§ 10*)—COM-PROMISE AND SETTLEMENT (§ 6*)—DISPUTED CLAIMS—PAYMENT.

Where an agent of a creditor, while in the discharge of his authority with reference to a demand of his principal, learned that the debtor disputed the amount due, and with such knowledge accepted a check stating that it was in full payment of the amount due, and the principal cashed the check and appropriated the proceeds, there was an accord and satisfaction barring a further recovery by the principal.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 67–74; Dec. Dig. § 10;* Compromise and Settlement, Cent. Dig. §§ 35–50; Dec. Dig. § 6.*]

7. PRINCIPAL AND AGENT (§ 178*)—KNOWL-EDGE OF AGENT—KNOWLEDGE OF PRINCI-PAL.

Knowledge of an agent obtained in the business of his principal, and while acting within the scope of his apparent authority, is notice to the principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 680–684; Dec. Dig. § 178.*]

Appeal from Cottle County Court; W. E. Prescott, Judge.

Action by the Bergman Produce Company against R. C. Brown. From a judgment for defendant, plaintiff appeals. Affirmed.

Slay & Simon and Theodore Mack, all of Ft. Worth, J. M. Whatley, of Paducah, and D. E. Magee, of Quanah, for appellant. Browne & Hawkins, of Paducah, for appellee.

HUFF, C. J. This is the third time this case has been before this court on appeal from a verdict and judgment in favor of the appellee. The former appeals are reported in 141 S. W. 153, and 156 S. W. 1102. The appellant, Bergman Produce Company, sued upon a verified account for a balance of $396.34. The answer of the appellee upon the last trial in the court below does not admit the account sued for, except as the same may be defeated by his answer as he had theretofore done, but he denies that the account is just and true in whole or in part, and denies that all just and lawful offsets, payments, and credits have been allowed on the same. It is further alleged that he purchased certain items of merchandise, and that it was agreed between the parties that defendant was to pay plaintiff at the end of each month, and plaintiff would allow defendant 10 per cent. on all goods purchased, and that plaintiff would give the account credit for all goods returned according to the inventory made by plaintiff, and also for all goods lost or damaged; and by a trial amendment defendant alleged that, owing to the length of time and inability to obtain his books, he was unable to set out all the identical items of damages and goods lost and those which were never received, but that they amounted to $275, and that he had not received credit therefor. He sets out a partial list, giving the items thereof, which amounts to the total sum of $182.-50; that about the 1st day of June, 1910, the plaintiff, by its agent, demanded a settlement with the defendant and at that time claimed an indebtedness due for about $350;

that defendant was not indebted in that sum and so informed the plaintiff, and that it had not allowed the credits as above alleged, and he then informed the agent he owed plaintiff only $198.20, which plaintiff then disputed and contended for the sum of $350, which defendant refused to pay, and that he then informed plaintiff's agent he would pay only $198.20, which was the amount justly due, and further informed the agent he would write a check for $198.20 and send the same to plaintiff in full settlement of the indebtedness, and they could accept it or not; that after the controversy he did mail to plaintiff a check for the sum of $198.20, and wrote on the check, "In full payment of account to June 1, 1910;" and that plaintiff accepted and cashed the check and appropriated the proceeds. After this settlement defendant continued to do business with the plaintiff during the months of June and July, and that about August 1, 1910, when plaintiff called for a settlement of all accounts due at that time, plaintiff claimed a sum of money greatly exceeding the amount actually owing; defendant claiming the true amount to be about $350. Plaintiff refused to accept that sum, but after the last controversy, in order to have a peaceable settlement, defendant, about the 2d day of August, 1910, delivered to plaintiff a check for $441.90, with the writing thereon, "Given in full payment of account for months of June and July;" and that plaintiff, with full knowledge of all the above facts, accepted the check, cashed it, and appropriated the sum of money so obtained. After that date, during the month of August, 1910, defendant purchased merchandise to the sum of $15.85, which sum was not due when this suit was instituted, and he tendered that amount into court.

The plaintiff, by supplemental petition, denied that any part of the $396.34 sued for had been settled for. It is also specially alleged that the controversy with Frank Hook, plaintiff's agent, was had after the $198.20 check was sent as alleged. It is also denied that plaintiff agreed to allow defendant 10 per cent. discount but did agree to allow 5 per cent. discount on certain syrups, such as Dr. Pepper, etc., which were allowed in the account. Plaintiff denied any knowledge of the damage to numerous articles alleged to have been damaged, amounting to $275, but alleges that it had given credit for all items about which defendant notified it, and that it had given proper credits for all items, and denies specifically that defendant returned items for some $30, for which he did not receive credit on account. Plaintiff admitted that its agent, Frank Hook, accepted the check for $441.90 in full settlement of the June and July, 1910, account, and admits the account for those months had been fully paid by the check of that date. The facts in this case show that the account upon which the suit is based is made up of sundry items of

merchandise and produce. The first item therein is of date February 28, 1910, and the last item August 3, 1910, totaling the sum of $1,732.37. The credits thereon, as evidenced by the sworn account, amounted to the sum of $1,336.03. The account is also credited in July and August with certain items returned to plaintiff by defendant, amounting to $120. There are items amounting to the sum of $227.27, charged to Brown and Jahn, which run from the opening of the account until March 12th thereafter. After this, the testimony indicates Brown bought out Jahn and assumed the above amount. The rest of the items were furnished Brown upon his individual account, and the partnership items were brought forward and charged to Brown. The appellee Brown in this case testified:

"When I began to do business with them (appellants) they agreed with me that I was to pay them at the end of each month for goods I bought from them, and they were to allow me 10 per cent. discount on all goods purchased from them. They also agreed to give me credit on my account for all goods I returned to them; also for all goods that were lost or damaged. I did not receive any of the 10 per cent. rebate on goods purchased. I had goods damaged and lost to the amount of about $165. It has been so long now, and I have not my books, as they have gotten lost or misplaced since I left Paducah. They were to give me credit for these losses. I was to have received credit for whatever property I returned. I cannot state the exact amount now of goods returned, but I am sure it was as much as $25."

He further testified he had a dispute with appellant's agent, Frank Hook, with reference to the credits claimed by him; that the claim was made by him in good faith; and that Hook put him off about the items claimed, but did not claim his (appellee's) contention was not right. He testified he did not owe anything on the accounts at the time of the suit, except the $15.85 purchased after August 1st, which was not due when the suit was instituted. He stated that he made the check for $198.20 some few days after he had the dispute with Hook over the account.

"When I had the dispute with Frank Hook, I told him that that ($198.20) was all I owed them, and he said I owed them more, and, as he started to leave the store, I told him I wanted to settle with him, but was not going to pay them any more than I owed them. I then told him I would mail to the house this amount that I claimed I owed them and write on it, 'In full settlement,' and they could take it or not, and I did so, and they took it."

The evidence is sufficient to show that the check for $198.20, as drawn, had the stipulation indorsed thereon, "In full payment of account to June 1, 1910," and was sent to appellant at Ft. Worth, who received and cashed it and appropriated the amount thereof. The account sued on is credited with this sum as of the date of the check. The evidence also shows that the check for $441.90, with the indorsement, "Given in full payment of account for months of June and July," was given by appellee and accepted by appellants. The account is also credited

with this amount as of its date. The appellant's principal place of business was at Ft. Worth, Tex., and it had a branch house at Quanah, Tex. The evidence further shows that the goods were shipped out from the branch house at Quanah. Frank Hook testified he was—

"manager of the Bergman Produce Company at Quanah; as agent, I have the power of making contracts and adjustments and settlements. I have authority to make settlements with customers in regard to accounts with them."

And he further testified: That he owned one-sixth interest in appellant's company, and that he did not agree to a 10 per cent. rebate on the goods sold, but did agree to give 5 per cent. on certain articles, and agreed to give defendant credit for all returned goods, and that he did so, and that appellee claimed there were some articles lost, but the company's books did not show that way. That when he had a statement he called on Brown for settlement.

"It was long about the 1st of June that I called on him for that purpose. I was not here at the time for the purpose of getting settlement. I do not remember just why I didn't have a settlement with him. I cannot tell just what came up."

The witness further testified that there was no dispute between him and appellee about the account until after the first check was issued and given; that he knew nothing about it, stating that it was in full settlement; and that Brown did not tell him he would so draw it. The facts show that, when the goods were billed out from Quanah, a report of such billing was made to the Ft. Worth house and the account kept at that office. It further appears all cash on accounts was remitted to the Ft. Worth house. The bookkeeper at that place received the mail, and says he received the check for $198.20 on June 4th, and thinks it had written on it, "In full settlement of account to date." This witness testified that at the time he received the check he had no notice of the dispute between Hook and Brown as to the account in question. The jury, upon special issues, found that Brown and Jahn purchased the goods sued for from February 28 to June 1, 1910, and that R. C. Brown assumed for those purchased by Brown & Jahn; that the appellant did not agree to pay 10 per cent. discount on the goods purchased; that for the goods lost or damaged, which were charged to appellee on the account, he was given credit therefor on the account; and that he received credit for all goods returned. In answer to the ninth issue:

"Did the defendant, R. C. Brown, and the plaintiff's agent, Frank Hook, have a bona fide dispute over the account due the plaintiff by the defendant for goods purchased up to June 1, 1910? Answer: Yes."

They further found this dispute was before the check was issued for $198.20 and sent to the Ft. Worth office.

The eleventh issue is as follows:

"If you have answered that the defendant, R. C. Brown, and Frank Hook had a bona fide dispute over the amount due plaintiff for the goods up to June 1, 1910, then did the agent of Bergman Produce Company at Ft. Worth, Tex., who received and credited the check for $198.20, know of such bona fide dispute at the time he received and cashed the check for $198.-20? Answer: No."

The trial court upon the verdict rendered judgment for the appellee, reciting in the judgment the finding, in addition to the verdict, that there was an accord and satisfaction between the parties on the account sued on, and that the same was binding upon both parties, and by reason thereof appellant was not entitled to recover anything; that there was a writ of garnishment issued on the 6th day of August, 1910, against the account of R. C. Brown for $425, and since such time withheld from defendant and therefore decreeing 6 per cent. interest on said sum from the 6th day of August, 1910. and that plaintiff pay all costs; and further finding that since the filing of the suit the sum of $15.85 became due and had been tendered and deposited in court by defendant, and judgment was rendered for appellant for that sum.

[1] The first, second, and fourth assignments complain at the action of the court in refusing to sustain appellant's motion to render judgment for the sum of $380.61, the balance due on the account up to June 1, 1910, and in rendering judgment for the appellee and in holding that the check for $198.20 was an accord and satisfaction of the account to June 1, 1910, for the reason that there was no sufficient evidence to support accord and satisfaction; that the check is not shown to have been upon a bona fide dispute of which the agent receiving the same was cognizant; that the account was conclusively proven, and there was no consideration to support accord and satisfaction; and that the verdict established the correctness of the account, and that the agent who received the check had no knowledge of any dispute between defendant and Hook, and, as a matter of law, there was no accord and satisfaction. It was decided at an early date, as regards liquidated demands, that "the mere payment of a lesser sum on the date fixed by the contract or after default cannot be in satisfaction for the whole, though it was agreed that such payment should satisfy the whole, because of a want of consideration for the discharge of the whole." Ruling Case Law, vol. 1, p. 184, § 15; Lanes v. Squyres, 45 Tex. 382; McGehee v. Shafer, 15 Tex. 198; Bowdon v. Robinson, 4 Tex. Civ. App. 626, 23 S. W. 816; Woodall v. Insurance Co., 79 S. W. 1090.

[2] The above rule has frequently arisen in this state and received the same solution. However, in Ruling Case Law, it is said:

"It is observable that the number of cases in which the rule has been applied and judgment

rendered for the plaintiff, despite the agreement to discharge, is small in comparison with those in which the courts have been able to discover some circumstances, however trifling, which could be construed as a technical legal consideration. The general rule is not favored by the courts, and the cases show, in a striking manner, the extreme ingenuity and assiduity to which the courts have exercised to avoid its operation; and, as it is rigid and unreasonable and defeats the express intention of the parties, it should not be extended to embrace cases not within the very letter of it." Railway Co. v. Clark, 178 U. S. 353, 20 Sup. Ct. 924, 44 L. Ed. 1099.

We also recognize the rule that "an accord and satisfaction is the result of an agreement between the parties and, like all other agreements, must be consummated by a meeting of the minds of the parties; if the creditor is to be held to abate his claim against the debtor, it must be shown that he understood or should have understood that he was doing so when he received the consideration claimed therefor," and that, to be enforceable, it must be supported by a good or valuable consideration. This consideration does not necessarily need to be adequate. If it is insignificant, or technical, merely, the contract will be sustained, provided the consideration is valuable, however slight, and will be deemed sufficient to support accord and satisfaction. Rotan Grocery Co. v. Noble, 36 Tex. Civ. App. 226, 81 S. W. 586.

[3] In this case the jury found there was a bona fide controversy as to the amount due on the account before the check was issued. If this is true, then we think it would be a sufficient consideration to support accord and satisfaction. Hunt v. Ogden, 125 S. W. 386; Cristler v. Williams, 130 S. W. 608; Olson v. Burton, 141 S. W. 549. The acceptance of an amount less than due as a full settlement of the disputed claim is a bar to recovery of the balance. Daugherty v. Herndon, 27 Tex. Civ. App. 175, 65 S. W. 891; Bradshaw v. Davis, 12 Tex. 336. The question is, not whether the appellee was correct in his contention in that he really had a legal and equitable defense to the claim in whole or in part, but consists in the fact that he in good faith urged or asserted a defense which he really believed was substantial. Insurance Co. v. Villeneuve, 25 Tex. Civ. App. 356, 60 S. W. 1014, citing Bank v. Blair (N. Y.) 44 Barb. 653.

[4] In this case the jury found that the appellee was liable for the amount of the account, and that he was not entitled to the discount of 10 per cent., and that he had received credit for the goods returned, lost, and damaged, which appellee asserted he had not, but they also found that the dispute of the account was made by him on those grounds before the check was issued, and that it was made by him in good faith, and that it was a bona fide dispute. Under the findings of the jury, this was a sufficient consideration for the agreement of accord and satisfaction. A check was issued for the sum of $198.20, "in full payment of account to June 1, 1910." This check was dated June 3d, and cashed June 4th, and on August 2d appellee gave his check for $441.90, "given in full payment of account for months of June and July." This last check is admitted by appellant in its supplemental petition as having settled and paid for all the goods for those months, and the evidence shows that to be true; but, as found by the jury, all the accounts up to June 1st amounted to about $364.76. At the time of issuing the check June 3d for $198.20, appellee contended he did not owe more, and the jury found that this contention was made in good faith. Under those conditions the check was issued.

"When a claim is disputed, and the debtor sends to his creditor a check or other remittance which he clearly states is in full payment of the claim, and the creditor accepts the remittance or collects the check without objection, it is generally recognized that this will constitute accord and satisfaction." Ruling Case Law, vol. 1, p. 196, § 32; Olson v. Burton; Hunt v. Ogden; Cristler v. Williams, supra; Barham v. Bank, 94 Ark. 158, 126 S. W. 394, 27 L. R. A. (N. S.) 439; Sanders v. Standard Wheel Co., 151 Ky. 257, 151 S. W. 675.

[5] It was the right of appellant to accept the check as proposed, or reject it, but there could be no modification of its terms by its will alone, without the concurrence of the appellee. The jury did not find the checks issued with the indorsement thereon, as shown by the pleading and the evidence, but this issue was not submitted to them for their finding. The fact, however, is that it was so issued as a payment in full to June 1st, and was so received by appellant and cashed by it, and the proceeds appropriated, which facts are practically undisputed, and will "be deemed as found by the court in such manner as to support the judgment." Vernon's S. C. Stats. art. 1985.

[6] It is insisted, under the holding of this court on the last appeal, that there was no agreement for the reason that the dispute was with one agent and the check was sent to another, who received and cashed it without knowledge of the dispute, and therefore the minds of the parties did not meet as to the consideration. As we understand, the facts in the former appeal did not show that Hook, with whom the dispute was had, was clothed with authority to settle and adjust the account, and, in so far as the record then showed, appellant had no knowledge of the appellee's contention that he did not owe the amount, when it received and cashed the check, and hence it was held that no agreement was shown. On this appeal it is shown, without dispute, Hook was the manager of the Quanah branch house, from which the goods were shipped, and that he had authority to settle and adjust the claim, and that he called upon appellee June 1st with reference thereto, and also that he owned a one-sixth interest in the appellant company. He, however, denies that there was at that time

any dispute. On this point the appellee contradicts him. The jury resolved this conflict ·in favor of the appellee. The appellee further says that at that time he told Hook he did not. owe the amount claimed, but owed only $198.20, and that he would issue a check for that amount, and write on it that it was a payment in full up to June 1st, and send it to appellant at Ft. Worth, and that it could accept or not, as they pleased, and that they did accept the check as so drawn and procured the money on it.

It will be noted on the former appeal it was held that the check for $441.90, with the writing that it was in full settlement for June and July, was an unambiguous contract when accepted by appellant. In that instance upon the former appeal, the facts justified that holding. So at this time, we think, under the facts on this appeal, the acceptance of the first check should be held to be an unambiguous contract between the parties. The finding of the jury under the evidence charged appellant with notice of the dispute between Hook and appellee. Its agent, Hook, while in the discharge of his authority, with reference to this claim, came into possession of the knowledge of the dispute, which knowledge was appellant's, and, with such knowledge, it accepted the check with the clear declaration that it was full payment of the account up to June 1st. After this time it continued to sell appellee goods through June and July, and again accepted a check for $441.90 in full payment of the account for those months.

[7] The knowledge of the agent obtained in the business of his principal, and while acting within the scope of his apparent authority, is notice to the principal—is elementary. It is based on the fiction of identity, and also upon the fact that it is the duty of the agent to communicate his knowledge to his principal, and the presumption that he has performed his duty. Ins. Co. v. Calvert, 100 S. W. 1033, 1036. In this case, when the appellant accepted the check in full payment of the account, it understood, or should have understood, that there was a controversy, and that if accepted, such check, under the stipulation, appellant thereby abated its claim against appellee for the balance claimed to be due on the account. If that was not a full payment, it then knew the. fact and should have refused to accept the check on the conditions named, and returned it to appellee. We do not think it could then hold the check and speculate on the chances of securing a full recovery. The assignments above named will be overruled.

The third assignment will be overruled. As we understand the allegation in appellee's answer and the trial amendment, the·appellee alleged wherein the account was not just and all items of credit allowed, and that, wherein it was not specific as to the particu-

lar items, an excuse was alleged for not being more specific in the answer. The fifth assignment will be overruled for the reasons heretofore given.

The case will be affirmed.