## HOLLINGER v. LLANO GRANITE & MARBLE CO. (No. 6630.)

(Court of Civil Appeals of Texas. Galveston. Dec. 23, 1914. Rehearing Denied Jan. 14, 1915.)

ACCORD AND SATISFACTION ⏝11 — CASHING CHECK—RECITAL OF PAYMENT IN FULL.

Where a subcontractor, a corporation, assigned its claim for materials furnished to a bank, and the bank notified the contractor, and, at a time when there was a dispute as to whether the subcontractor should pay liquidated damages for delay, cashed a check sent the bank by the contractor, reciting that it was payment in full, there was an accord and satisfaction, though the amount of the check was less than the amount claimed.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 75–82; Dec. Dig. ⏝11.]

Error from District Court, Orange County; A. E. Davis, Judge.

Action by the Llano Granite & Marble Company against Job Hollinger and others. From a judgment for plaintiff, defendant Hollinger brings error. Reversed and rendered.

Jacobs & Newman, of Kansas City, Mo., and Hightower, Orgain & Butler, of Beaumont, for plaintiff in error. Holland & Holland, of Orange, for defendant in error.

PLEASANTS, C. J. This suit was brought by appellee (defendant in error) against Job Hollinger, a citizen of the state of Missouri, and the Lutcher & Moore Lumber Company, a Texas corporation, to recover damages for the alleged breach by defendant Hollinger of a contract by which plaintiff undertook to furnish certain material and perform certain work as subcontractor under said defendant in the construction for defendant corporation of a church building in the city of Orange, and to foreclose a contractor's and materialman's lien on said building.

The petition declares upon two contracts executed by plaintiff and the defendant Hollinger, by which plaintiff, for the considerations stated in said contracts, agreed to furnish the material and construct all of the brick and cut stone work required in the construction of said church building in accordance with the plans and specifications prepared by James Oliver Hogg, which plans and specifications were the basis of the contract for the construction of said building executed by and between said Hollinger and his codefendant. It is alleged that said contracts were fully performed by plaintiff, and that there is a balance due plaintiff for the material and labor furnished by him under said contracts of $10,900, of which amount $3,548.81 is due on the contract for the brick work and $7,351.29 on the contract for the cut stone work. The petition further alleges that plaintiff had performed extra services in making changes in said work at the request, of the defendants, for which he claimed compensation. Plaintiff also claimed damages in the sum of $6,230.70 for loss of time and money due to changes made in the plans and specifications for the building by the defendants. Judgment was asked against the defendant Hollinger for each of the amounts claimed in the petition and against the defendant corporation establishing and foreclosing a contractor's and materialman's lien upon said building for the amount due upon said contracts.

The defendant Hollinger answered by general demurrer, special exceptions, and general denial. He also filed the following special pleas:

"By the fifth paragraph of its answer defendant Hollinger specially admitted that the exhibit attached to the plaintiff's petition was correct, wherein it set up certain items of charge and credit between plaintiff and defendant under the contract for the brick work, dated October 4, 1907, except in certain particulars. One of these particulars was that by the terms of said contract it was provided that the plaintiff should have all of the brick work on said Lutcher Memorial Church, which brick work was covered by said contract, entirely completed not later than May 1, 1908, and that, if said

brick work was not completed by that date, the plaintiff should pay to the defendant, as liquidated damages, the sum of $10 per day for each and every day after said date that said work was not completed. Defendant alleged that said work was not completed by May 1, 1908, and that it was not entirely completed until more than 349 days after said May 1, 1908, and a counterclaim was interposed against the defendant for 349 days' liquidated damages, at the rate of $10 per day, or a total of $3,490, which sum defendant Hollinger prayed should be allowed as an offset and counterclaim against the suit of plaintiff herein, against the balance alleged to be due under said contract by the plaintiff.

"By the sixth paragraph of its petition defendant Hollinger admitted that the exhibit attached to plaintiff's amended petition correctly showed the account of credits and charges between plaintiff and defendant under the contract for the cut stone work, dated June 25, 1907, except in certain specified particulars. Certain credits were claimed by the defendant Hollinger against the plaintiff, among which was a claim for liquidated damages, amounting to the sum of $3,490, similar to the one under the contract for the brick work.

"It was alleged in the seventh paragraph of defendant's first amended answer that long prior to the institution of this suit, and on or about the 7th day of June, 1909, the plaintiff herein, which was a corporation, by resolution of its duly elected and qualified board of directors, had assigned and set over to the National Bank of Commerce of San Antonio, Tex., by absolute transfer, all of its right, title, interest, and claim in and to all demands of whatsoever character, whether in contract or in tort, at that time or at any time thereafter existing in favor of the plaintiff herein, and against the defendant Hollinger, by reason of work done by the plaintiff for the defendant on the Lutcher Memorial Church at Orange, Tex., which said assignment was in all respects a valid and absolute transfer to said National Bank of Commerce of all of plaintiff's rights and interests in said two contracts, as aforesaid, and the balance due thereunder, if any, and of the claims hereinabove referred to, if any.

"It is further alleged that on or about March 16, 1910, defendant Hollinger paid to said National Bank of Commerce the sum of $5,007.06, which was paid by the defendant to said bank for the plaintiff, as a final payment to said plaintiff, for work done on said Lutcher Memorial Church, and that said payment was made to said bank under said two contracts, which had been previously assigned by the plaintiff company to the National Bank of Commerce, and that said National Bank of Commerce accepted said sum of $5,007.06 in full settlement, accord, satisfaction, and payment for all work done and all material furnished, and all balance due and of all demands arising in favor of said plaintiff under said two contracts. It was alleged that the payment to said bank under such circumstances constituted an accord and satisfaction of any claim asserted by the plaintiff in this suit against the defendant Hollinger, under and by virtue of said two contracts.

"In the eighth paragraph of his answer defendant alleged that if he was mistaken in his prior allegation to the effect that said National Bank of Commerce was clothed with full and complete authority to accept from defendant the payment of said sum of $5,007.06 in full and final satisfaction of any balance due to plaintiff herein, and that, if it was mistaken in its allegation that said bank held an absolute assignment of all the right, title, interest, and claim of plaintiff under said two contracts, nevertheless said bank was clothed by the plaintiff with the apparent authority to receive the payment of $5,007.06 in full and final settlement, accord, and satisfaction to plaintiff under

said two contracts, and was held out by plaintiff as possessing such authority, and that defendant, acting upon said apparent authority, made such payment in good faith, and that by reason of its holding out of said bank as possessing such authority, and by reason of the fact that defendant acted on said implied authority in good faith, plaintiff was now estopped 'from denying that said National Bank did not possess in reality the authority which it apparently held to receive from the defendant Hollinger said sum of $5,007.06 in full settlement, accord, and satisfaction of plaintiff's claim under said two contracts."

The defendant corporation set up its contract with defendant Hollinger and asked that, in event any judgment be rendered against it in favor of plaintiff, it have judgment over against defendant Hollinger and the surety upon his contractor's bond, the United Surety Company, which it prayed be made a party to the suit. The surety company answered by general and special exceptions, general denial, and several special pleas, the nature of which need not be stated.

The case was tried in the court below without a jury and resulted in a judgment in favor of plaintiff for the sum of $6,964.60, the balance found to be due by the court upon the contracts for the construction of the brick and cut stone work. The court found against plaintiff upon his claim for damages and for compensation for extra work, and the amount adjudged plaintiff, $6,964.60, was the damages for delay claimed by defendant under his contracts with plaintiff and withheld by him from the amount due plaintiff under his said contracts. Judgment was also rendered in favor of the Lutcher & Moore Company and the United Surety Company.

The conclusion we have reached upon the appellant Hollinger's plea of accord and satisfaction renders a discussion of the other questions presented by appellant's brief unnecessary. Upon this question the undisputed evidence was as follows: The contracts sued on were dated June 25 and October 4, 1907, respectively. Each of these contracts contained a provision that, in event plaintiff failed to complete the work covered thereby by May 1, 1908, he should pay to defendant Hollinger, as liquidated damages, the sum of $10 for each day of delay in the completion of the contract after said May 1, 1908. The contracts were not completed by plaintiff until more than a year after said May 1, 1908, and under the terms of the contract defendant Hollinger made claim for the damages of $10 per day. This claim was disputed by plaintiff; its contention being that, by agreement between it and the defendant, the latter had, for a valuable consideration, waived his claim to such damages. The evidence upon this issue was conflicting.

On June 7, 1909, the board of directors of the plaintiff corporation passed the following resolutions:

"Meeting of the board of directors of the Llano Granite & Marble Company held in the office of the secretary at San Antonio, Texas, on the 7th day of June, 1909. Present J. S.

Sweet, A. J. Ridder, George Bodet. It appearing that the National Bank of Commerce of San Antonio, Texas, holds the company's notes to a large amount, for advances made on account of the church constructed at Orange, Texas, and that more funds will be needed before the completion of said contract, it is therefore moved by A. J. Ridder, seconded by J. S. Sweet, that we transfer, assign and set over to the National Bank of Commerce of San Antonio, Texas, all our right, title and interest to whatever balance may be due us by Job Hollinger of Kansas City, Missouri, on said Orange contract."

On October 16, 1909, the president of the National Bank of Commerce wrote the defendant Hollinger, stating that the bank held the above order, and inclosing him a copy thereof. This letter proceeds:

"I understand that the work at Orange is about completed and would very much appreciate your acknowledgment of this letter and your advice that you will pay the money to us when payable. I would very much appreciate an expression from you as to the probable amount that will be due at the closing of the contract, and when you expect to complete the work."

There seems to have been delay in obtaining an acceptance of the work by the architect. On February 26, 1910, the architect telegraphed appellee's manager that he had given Hollinger an acceptance of the work several days previous. This is the only evidence of the date of acceptance we have found in the record.

On March 16, 1910, Hollinger wrote the bank, inclosing a statement of the account between himself and appellee and a check to cover the balance due as claimed by him. The amount of damages for delay shown in this account was not the full amount to which Hollinger claimed to be entitled. This check and the subsequent indorsements thereon are as follows:

"Orange, Texas, March 16, 1910. No. 120.
"The First National Bank of Orange, Texas:
$5,007.06.
"Pay to National Bank of Commerce or order five thousand and seven and 96/100 dollars, balance in full on account of contracts dated June 25, 1907, and October 4, 1907, for Lutcher Mem. Chr. Orange, Texas, per order from Llano Granite & Marble Co. dated June 7, 1909.
"Job Hollinger         Personal Acct."

Indorsed on back of check:

"Protesting against assertions on reverse hereof and without obligating Llano Granite & Marble Co. For collection. Pay any bank or banker or order. National Bank of Commerce of San Antonio, Texas."

Indorsed on face:

"Paid March 31, 1910. 1st Natl. Bank, Orange, Texas."

Upon receipt of this letter the bank wrote Hollinger as follows:

"Job Hollinger, Esq., 615 New Nelson Bldg., Kansas City, Mo.—Dear Sir: Your favor of the 16th is received inclosing check $5,007.06 on the First National Bank of Orange, together with the statement of the account of the Llano Granite & Marble Company. We are not using the check at this time but holding it for advice from the Llano Granite & Marble Company. They desire to check the account and we will await their further advices before accepting or making use of the said check. It is probable that they will desire to communicate with you. Kindly promptly acknowledge receipt of this letter with your further advices.

"Yours truly,     J. P. Barclay, President."

On March 30, 1910, the day before the check was paid by the bank at Orange, on which it was drawn, plaintiff wrote the defendant the following letter:

"San Antonio, Texas, 3–30–10.

"Mr. Job Hollinger: As I wrote you some days since that Mr. Teich would go over the account and statement sent the bank by you. I have had Mr. Teich go over the account and everything seems all right as to your statement, but the liquidated damages you make claim does not seem to be right as you have not had to pay for the over time from the Lutcher Moore people. Now I wish to ask you as a man that you treat us as you would like to be treated in this matter. I have done all in my power to have this contract pushed as rapidly as we could and when the company of which you are the general contractor does not insist on your paying any liquidated damages, it does not seem that you should insist on our paying you any. You are aware that you did not deliver the foundation to us as you should have and it was your delay that first delayed us, and therefore you should not exact of us something that you caused to be done. You are aware that we sustained a very great loss on this contract and knowing that we were sustaining this loss we went ahead and completed the contract. Now Mr. Hollinger, I believe you are just in this matter and we do not wish to have any words over this as I have at all times believed that you would treat us just and fair in the settlement of this claim. Kindly let me have an expression from you by return mail and you will greatly oblige,

"Yours very truly,
"The Llano Granite & Marble Co.,
"John S. Sweet, Pres."

The amount received by the National Bank of Commerce on the check sent it by defendant Hollinger was appropriated by it to the payment of the indebtedness due it by the appellee, for which it held the account against defendant Hollinger as security, and was not sufficient to discharge such indebtedness.

We are of the opinion that the cashing by the National Bank of Commerce of the check, containing the recital therein that it was payment in full of the amount due plaintiff by the defendant, constituted an accord and satisfaction or settlement of plaintiff's claim. Defendant was as fully protected under the facts of this case in dealing with the bank as he would have been had he sent the check to plaintiff corporation and it had been cashed by it. The bank was the legal holder of the account at the time the payment was made to it, and plaintiff had informed defendant that it had transferred its claim to the bank and directed him to make payment to the bank. Such being the facts, any settlement made by defendant with the bank would be binding upon the plaintiff.

It seems to be well settled that the acceptance and collection even under protest of a check given in full payment of a disputed claim, but for a less amount than is due, is a bar to recovery of the balance. Hunt v. Ogden, 125 S. W. 386; Daugherty v. Herndon, 27 Tex. Civ. App. 175, 65 S. W. 891;

Stetson-Preston Co. v. Dodson & Co., 103 S. W. 685.

In the case of Fuller v. Kemp, 138 N. Y. 237, 33 N. E. 1035, 20 L. R. A. 785, the court, in discussing this question, says:

"The tender and the condition could not be dissevered. The one could not be taken and the other rejected. The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction. Under such circumstances, the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of this act. * * * The law favors the adjustment of such controversies without judicial intervention, and will not permit the creditor to accept and retain money which has been tendered by way of compromise, and then successfully litigate with his debtor for the recovery of a greater sum."

The case of Stetson-Preston v. Dodson, supra, in which a writ of error was denied by our Supreme Court, is a decision of the exact point involved in this suit. The statement of the case and the holding of the court are as follows:

"The judgment of the trial court may be affirmed on that phase of the case which shows that the appellants received, cashed, and used the check sent them by Dodson, accompanied with the statement that it was in settlement of the indebtedness due them, made with the representative, McClellan & Co. This check was accompanied with a full statement, showing what was embraced in the settlement between Dodson and McClellan. The letter in which the check was sent to the plaintiffs fully informed them that it was intended for a certain purpose; that is, in payment of an amount determined to be due them under a settlement with their agent, McClellan. They accepted this check and appropriated the funds that arose from cashing it. It is true at the same time they wrote a letter to the appellees, in effect stating that they would not be bound by this settlement, but that they would credit, and had credited, the sum received on appellees' indebtedness. There was existing prior to that time a controversy between the parties as to what the amount was. If it be conceded that McClellan & Co. were not authorized to make a full settlement with the appellees, and if, in making such settlement, they allowed the appellees certain credits which they were not entitled to, these facts would not affect the right of the appellees to judgment under the peculiar circumstances of this case. The appellants were only authorized to accept and appropriate the draft in accordance with the terms under which it was sent. They were distinctly informed that it was sent in full payment of a settlement made with McClellan; and, if they did not intend to be bound by such settlement, they should have repudiated the transaction in toto and returned to the appellees the draft received. Knowing that it was sent in pursuance and satisfaction of that settlement, retaining the draft and appropriating it operated in law as a ratification of the act of McClellan, and bound them to the terms of the settlement agreed upon. Judgment affirmed."

Under this view of the law, the facts being undisputed, appellee was not entitled to recover any judgment in the court below, and it follows that the judgment must be reversed, and judgment here rendered in favor of appellant; and it is so ordered.

Reversed and rendered.