## HUMBLE OIL & REFINING CO. v. WOOD.

### No. 13370.

Court of Civil Appeals of Texas. Fort Worth.

May 8, 1936.

R. E. Seagler, of Houston, and Sayles & Sayles, of Eastland, for appellant.

E. G. Thornton, of Olney, for appellee.

SPEER, Justice.

L. V. Wood sued the Humble Oil & Refining Company in the county court of Young county, Tex., for $324.72, alleged to be due him for services performed at a repressuring plant belonging to the defendant.

We shall refer to the parties as they appeared in the trial court.

Plaintiff claims he was employed in August, 1933, by one Lee Elzey, district superintendent for defendant, to work at defendant's plant under the direct supervision and control of one J. E. Clayton, foreman and manager; that under the contract of employment he was to receive a stipulated sum per hour for his services of 6 hours per day and for 6 days per week; that under the supervision and instructions of the manager J. E. Clayton, between

January 1, 1934, and September 30, 1934, he worked 246 hours overtime, that is, that many hours over and above the 6 hours per day and 6 days per week; that, while there was never. any agreement between him and Elzey about the price to be paid for overtime, he alleged it was customary in that community to pay time and a half for services rendered, known as overtime. He pleaded in the alternative that, if that amount was not shown to be customary, then on quantum meruit for the same amount.

Defendant answered with a general denial and special pleas (1) that no agent or representative of defendant had authority to employ plaintiff for overtime work nor to bind it under a promise to pay therefor and that these facts were well known to plaintiff; (2) that plaintiff was estopped to claim compensation for any overtime he may have labored for the defendant; and (3) payment, accord and satisfaction.

By supplemental pleadings. the plaintiff admitted certain payments had been made to him during the period of time he claimed to have performed the extra labor, but that such payments were made by defendant and received by him solely upon a basis of payrolls turned in by defendant's foreman and did not show any extra or overtime and none was included in payments by the defendant.

The case was tried before the court without a jury, resulting in a judgment for plaintiff for the amount claimed.

■ The defendant is a corporation, and it follows that it must transact its business through agents and employees, whether this be done through its officers or persons regularly employed and empowered to transact such duties with the public; and persons dealing with such representatives may properly assume that the agent and representative can bind the corporation in all matters within the scope or apparent scope of his authority. It is not contended by plaintiff that any person purporting to represent the defendant ever promised to pay him for overtime while in its employment, but at most he claims he did work overtime and that J. E. Clayton, the local manager of defendant's plant, knew it. This was denied by Clayton, however, and that, because he performed the services and defendant received the benefit of it, he should receive pay in the amount sued for. "Apparent authority" has been held by our courts to mean that which an agent appears to have by reasonable deductions to be drawn from his doing that which he actually has authority to do, Thompson v. Keys (Tex.Civ.App.) 162 S. W. 1196; Campbell Paint & Varnish Co. v. Ladd Furniture & Carpet Co. (Tex.Civ. App.) 83 S.W.(2d) 1095 (error dismissed); but plaintiff cannot consistently claim he relied upon anything that either Lee Elzey, the district superintendent, or J. E. Clayton, the local manager, may have said as to payment for overtime, nor can he rely upon any knowledge either of them may have had that he has working overtime. He testified that neither of them ever told him or led him to believe the defendant would compensate him for the extra services, that he knew it was against the rules and policies of the defendant to permit a man to work overtime, and that it was adhering to the "N. R. A." 100 per cent. From all this he also knew the only way for him to draw pay for his extra labor was to induce the defendant to put him on what he called the "extra payroll"; this he admits was refused by both Elzey and Clayton. It must follow then that plaintiff had no right to assume that, because Elzey had employed him to work under Clayton at so much per hour, 6 hours per day and 6 days per week, it was within the "apparent scope" of Elzey's authority as agent for defendant to permit him to work overtime with an implied contract or agreement upon the part of Elzey for the defendant to pay for the services.

The statement of facts before us amply supports the court's findings of facts in the following particular: "That Lee Elzey and J. E. Clayton were not supposed to have the men working under them, do overtime work, and that this fact was known to L. V. Wood while he was doing such overtime work, but that he was under the direct orders of J. E. Clayton and did all of the overtime work herein mentioned under such direct orders of J. E. Clayton, plant manager and superintendent as above mentioned."

The facts before us also disclose that Mr. Clayton was being paid by the defendant for the same services plaintiff claims to have rendered in his overtime work, and it could hardly be expected by plaintiff that the defendant would willingly pay him for the same service.

Moreover, J. E. Clayton was the defendant's general plant manager, and as such was responsible for its operation, and,

while he did not hire and fire employees under him, none were hired or retained who were not satisfactory to him. Having this authority, he was in a position to demand that employees respect his wishes and in a way comply with his requests in connection with their line of employment, and in some respects he was in a position to ask favors of employees which might prove beneficial to him personally and not inure to the benefit of defendant. For instance, plaintiff testified, and it was not denied by Clayton: "I began work as relief engineer. Soon after I began work we were put on six hours per day and six days per week schedule. I was to relieve the engineermen, one day each week each, and to relieve Mr. Clayton on Saturdays and Sundays of each week, which I did regardless of the number of excessive hours put in."

All of the overtime accrued during the time he claims to have been relieving Clayton on Saturdays and Sundays, and plaintiff's interpretation of the contract of employment, as indicated in that part of his testimony quoted above, could be construed to mean that under his contract he was to relieve Clayton at the time indicated, irrespective of the amount of extra time required.

It is claimed by plaintiff that his overtime was put in between January 1, 1934, and September 30, 1934, but none is claimed from the time he began work in August, 1933, to January 1, 1934, yet there is nothing to indicate his labors and duties were changed, nor that after January 1, 1934, more time was required to perform them; he made no demand for extra pay until he was discharged.

Plaintiff mentioned to Elzey in February or March, 1934, that he was doing overtime and requested that he be put on an extra pay roll so that he could work as much as he wanted to. He further testified that, when he made this request, Elzey told him he would see Mr. Clayton and instruct him not to work plaintiff but 6 hours per day. If plaintiff had theretofore relied upon the authority of Elzey to bind the defendant to pay him for overtime, this was sufficient for him to know it would not be done, yet he says he continued the work until in the "summer" following, when he again requested that he be put on the extra pay roll so that the defendant could pay him for extra time. The result of this request was that on about September 14th Mr. Clayton told plaintiff he would not be required to replace him (Clayton) on Saturdays and Sundays and work overtime. The plaintiff says that after September Mr. Clayton never spoke to him until he was relieved or laid off in March, 1935. .

So far as the record shows, plaintiff never made any request of defendant for payment for overtime until March 30, 1935, but his acts consisted of efforts to be placed on a pay roll that permitted overtime, and this was as many times refused by Elzey and Clayton.

Clearly there is no express contract upon the part of defendant to pay for plaintiff's overtime, and from what we have said it will be seen there could have been no implied promise to pay; with the knowledge of plaintiff that defendant was not making payment for overtime services except when specially placed on extra pay rolls, he was not warranted in assuming that he would be paid by the defendant.

Payment of all sums due plaintiff as well as estoppel were pleaded by the defendant. The record before us discloses that twice each month during the period of time in which plaintiff claims he performed extra labor the defendant sent to plaintiff a check for a specified amount containing the statement: "Endorsement of this check constitutes receipt in full settlement for services rendered for period ending Jan. 31, 1934," except that the date quoted was changed each time to cover each succeeding period to September 14, 1934. The plaintiff admits having received these checks and says he cashed each of them, that they did not include any pay for overtime, and he knew he had a claim for overtime, but cashed the checks because he needed the money.

■ The rule is well settled in this state that, if there is a bona fide dispute between parties as to the existence of a debt or as to the amount of a valid claim, if the debtor remits to his creditor a lesser amount than is claimed by the latter to be due, and advises him definitely either by letter accompanying the remittance or by indorsement in the check or draft that the amount is for settlement in full of all sums due and unpaid, and the creditor with this knowledge retains the remittance, he cannot thereafter recover for any excess claimed, but will be held to have accepted the payment for the purposes stated; it be-

comes accord and satisfaction. Bergman Produce Co. v. Brown (Tex.Civ.App.) 172 S.W. 554, 557; Miller Bros. & Co. v. Lesinsky Co. (Tex.Civ.App.) 202 S.W. 992, 993 (writ dismissed); Root & Fehl v. Murray Tool Co. (Tex.Com.App.) 26 S.W. (2d) 189, 191, 75 A.L.R. 902.

It may be contended that, in so far as plaintiff and defendant were concerned, there was no bona fide dispute as to the amount owing on the regular time sheet or pay roll, and the checks were accepted by plaintiff simply in settlement of all sums shown thereby; but clearly, if there was any further sums claimed by plaintiff, he knew it, and cannot now be heard to say he accepted the checks bearing the provisions mentioned, with a secret evasion in his mind, that he had a claim about which the defendant knew nothing and that he would appropriate these payments and apprize defendant later · of his additional claim.

It was said in Bergman Produce Co. v. Brown, supra, where a similar question was before the court: "It was the right of appellant to accept the check as proposed, or reject it, but there could be no modification of its terms by its will alone, without the concurrence of the appellee."

In the case of Miller Bros. v. Lesinsky Co., supra, a check was sent with a letter stating it was settlement in full for the disputed account, the amount being less than that claimed by the payee, the court held: "We are further of the opinion that the evidence conclusively shows that there was a bona fide dispute between the parties as to the amount due on the account prior to the time the check was sent to plaintiff, and that it is practically undisputed that the check sent was accompanied by a sufficiently clear and definite statement that it was in full payment of the amount due, and that the creditor plaintiff cashed it and appropriated the money. Therefore the court did not err in instructing a verdict for defendant."

The Commission of Appeals in the case of Root & Fehl v. Murray Tool Co., supra, had before it a case similar in many respects to the one · under consideration. Defendant in error Murray Tool Company sued plaintiff in error Root & Fehl for debt. Plaintiff in error answered with a plea of accord and satisfaction; the evidence showed a check had been given by the debtor to the creditor for an amount less than was claimed by the latter to be due; this check bore a notation that it was payment in full of the disputed account. The creditor cashed the check with knowledge of the conditions contained therein. The court in sustaining the plea of accord and satisfaction, said: "It is the settled law of this state that, when an account is made the subject of a bona fide dispute between the parties as to its correctness, and the debtor tenders his check to the creditor upon condition that it be accepted in full payment, the creditor must either refuse to receive the check or accept the same burdened by its attached condition. If he accepts the check and cashes the same, he impliedly agrees to the condition, although he may expressly notify the debtor that he is not accepting the same with the condition, but is only applying the same as a partial payment on the account. Stetson-Preston Co. v. H. S. Dodson & Co. (Tex.Civ.App.) 103 S.W. 685; Hunt v. Ogden, 58 Tex.Civ.App. 443, 125 S.W. 386; Daugherty v. Herndon, 27 Tex.Civ. App. 175, 65 S.W. 891; Buford v. Construction Co. (Tex.Civ.App.) 279 S.W. 513; Simms Oil Co. v. American Refining Co. (Tex.Com.App.) 288 S.W. 163."

██ It will be seen by the above quotation that, even though the creditor should advise the debtor, he would not accept the tender in full settlement of the debt, yet, if he retains the proceeds of the check with its conditions to the contrary, he is bound by its terms. The plaintiff in the case at bar admits the receipt, and cashing of the several checks each containing the provision hereinabove shown, without even a protest on his part, but says he did so because he needed the money. He will not now be heard to deny payment in full "for services rendered" during the period of time covered by the respective checks.

We conclude it was error for the trial court to render judgment for plaintiff under the facts shown and the law applicable thereto. We sustain defendant's assignments of error presenting the question.

The judgment of the trial court is therefore reversed and judgment here rendered for the defendant.