## WILSON v. WILSON.

[No. 7,379.   Filed December 15, 1911.]

1. BILLS AND NOTES.—*Accord and Satisfaction.—Instructions.*— In an action on notes, the defense being accord and satisfaction, an instruction that if the settlement "was made by the defendant with the understanding and belief that the notes in controversy were included in it, and that plaintiff knew or should have known by the negotiations which took place that the defendant so understood the fact and while knowing such fact, executed the receipt in controversy and upon its delivery to the defendant took and accepted" defendant's money in settlement, the defendant should recover, though subject to some criticism, is not prejudicial.  p. 110.

2. ACCORD AND SATISFACTION.—*Unliquidated Debts.—Settlement.*— Where a debtor attaches conditions to the payment of a certain sum in satisfaction of an unliquidated sum, to the creditor's knowledge, such creditor by accepting such money is bound by the conditions.  p. 115.

From Tippecanoe Circuit Court; *DeWitt C. Wilson,* Special Judge.

Action by Joseph Wilson against Justin Wilson.  From a judgment for defendant, plaintiff appeals.  *Affirmed.*

*H. G. Leslie* and *Charles R. Milford,* for appellant.
*Stuart, Hammond & Simms,* for appellee.

IBACH, P. J.—Appellant sued appellee on two promissory notes.  Appellee denied neither the execution nor the validity of the notes, but claimed that they were included in a settlement made prior to the bringing of this action, when he paid to appellant $2,200, and was given a receipt in full of all claims and demands against him.  Appellant contended that the notes were not included in said settlement.  The entire case depended on whether the notes were so included, which fact was found against appellant by the verdict of the jury.

The sole errors relied upon for reversal are the giving of instructions five and six at appellee's request.

A brief statement of the evidence to which these instructions are pertinent follows: Appellee is a nephew of appellant. They had been associated together in the carpentering and contracting business and in other ways from about 1886 until a year or so before the bringing of this action. During that time they had various money transactions with each other, and appellee became indebted to appellant in a considerable sum of money, to cover which he, in 1902, gave his note. About 1905 appellee, whom at that time appellant fully trusted, conducted the negotiations which led to the sale of some real estate belonging to appellant, and appellee, seemingly with full authority from appellant so to do, loaned in his own name certain money obtained from such sale. About a year later he gave to appellant a note for $1,070, to repay this money, and also gave a note for $106 to cover a running account. Appellant had for a time after the sale of the real estate lived with appellee and his family, but near the close of 1906, at about the time the notes in suit were executed, he went to live in Payne, Ohio, with another nephew, Denton E. Wilson. Appellant's attorney then wrote to appellee, asking him to settle certain claims which appellant held against him, and after some correspondence appellee made a trip to Payne, Ohio, and had a conference with appellant and his attorney concerning a settlement. During these negotiations appellee claimed that he owed appellant nothing but the notes in suit. Appellant claimed that in addition to said notes appellee owed him a note for $1,800, and also some other amounts, which were off-set in part by amounts owing to appellee by appellant, leaving $2,699 due to appellant. Appellee claimed that his uncle had formerly remitted to him the payment of the large note, and in support of this exhibited a note for $1,627, executed by him to appellant in 1902. However, in certain statements of accounts which he made for the purpose of settlement, he set down items for which he proposed to settle, amounting to about $1,800,

not including among these the notes in suit. No settlement was made at the time of appellee's first visit to Payne, Ohio, but a short time later he made another trip there, met appellant and his nephew, Denton E. Wilson, and effected a settlement. Appellant's attorney was not in town, and as appellee was in a hurry to return to his sick wife, the three went at 9 o'clock on Saturday evening, June 21, 1907, to the office of another attorney, who prepared a receipt in the following words, which appellant signed on receiving the sum of $2,200.

"Payne, Ohio, June 21, 1907.

Received of Justin A. Wilson $2,200, in settlement of all claims and demands of whatever kind or nature which I have against him.      Joseph Wilson.

Attest:

Don C. Corbett.

D. E. Wilson.''

On returning to his home, appellee on June 26 wrote to appellant asking him why he had not, as he had promised, sent to him the two notes in suit, which he had been unable to get from the bank on the night of the settlement. On July 1, before receiving an answer to this letter, he wrote another of similar character. The first letter was answered by appellant's attorney, on July 1, claiming that the notes in suit were not embraced in the settlement.

The language of the receipt would, it is conceded by the parties, embrace the notes in suit, and appellee's conduct after the settlement would tend to show that he believed these notes were embraced in the settlement. Appellant, however, denied that on the night of the settlement he promised to send these notes to appellee, and to include them in the settlement, and Denton E. Wilson, who was with appellant and appellee during the time they were together, except for about ten minutes, denies that these notes were mentioned in any way in his hearing.

It is true that it appears that, except in the first letters

and negotiations, little, if any, mention is made of the notes in suit, and in none of the later correspondence concerning appellant's claim are they mentioned. To offset this, the language of the receipt would include the notes, and appellee testifies that on the night of the settlement appellant agreed 'o include these notes in the settlement, and to deliver them to him.

Instruction five is as follows: "I instruct you, gentlemen, that while the law permits the maker of a receipt given in settlement of a controversy to explain its terms and the circumstances under which they were written, this does not mean that either of the parties to the receipt can, by explanation, change the facts and circumstances as they actually existed at the time the receipt was given. It does not follow that because one may be permitted to explain an ordinary receipt given by one person to another, that either person may explain a secret intention which he may at the time have had in his mind, and which the other person knew nothing of, and if in this case you find from all the evidence and circumstances proved, that the settlement made between plaintiff and defendant on June 21, 1907, was made by defendant with the understanding and belief that the notes in controversy were included in it, and that plaintiff knew or should have known by the negotiations which took place that the defendant so understood the fact, and while knowing such fact executed the receipt in controversy, and upon its delivery to defendant took and accepted $2,200 from defendant, then and in such event your verdict must be for defendant, no matter what secret intention, if any, plaintiff may have had in his mind at the time."

The defense in this case is that of an accord and satisfaction. Appellant argues that "in order to make out this defense, the proof must be clear and unequivocal, that the condition imposed by the debtor, namely, that the amount tendered was to be in full payment of the entire debt, was insisted upon by such debtor; that if a smaller amount than

is claimed by appellant is accepted, it must appear that appellant was bound to understand that if he took that $2,200 he took it subject to that condition; that to accept a less sum than was claimed by the creditor would not have the effect of satisfying the debt, unless it had been expressly accepted in full settlement by the creditor."

The law bearing on this proposition is set out in the case of *Talbott* v. *English* (1901), 156 Ind. 299, as follows: "The rule of law may be said to be: When the amount is in dispute, or is uncertain and unliquidated, and the debtor offers the creditor a definite sum in satisfaction, and accompanies the offer with such acts and declarations as will unmistakably indicate to the creditor the condition that an acceptance of the offer is a complete accord and satisfaction, such offer can only be accepted as payment in full of the claim. * * * Before the creditor is compelled to go with less than the sum actually due him it must be perfectly clear that he accepted less with the full knowledge that it was offered him, only upon the condition that its acceptance should be in discharge of the whole claim. In the case of *Petit* v. *Woodlief* [1894], 115 N. C. 120, 20 S. E. 208, it is said: 'The party to whom the offer is made must of necessity understand, from its very terms, that if he takes the money he takes it subject to such condition;' and in the case of *Fuller* v. *Kemp* (1893), 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785, this language is used: 'To constitute an accord and satisfaction, it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom, that if he takes it, he takes it subject to such conditions.' "

From this quotation it will be seen that the Supreme Court, in stating that a debtor who attempts to pay in full

a claim with an amount less than that claim must make his intention known to the creditor, has used or approved language such as that the debtor must make such condition *perfectly clear, must unmistakably indicate it,* so that the creditor *must of necessity understand* it, and is *bound to understand it,* for he must have *full knowledge* of the condition in order that the claim may be discharged.

The instruction before us informs the jury that if it finds that "the plaintiff knew, or should have known, by the negotiations which took place," that defendant understood that the notes in controversy were included in the settlement, and while knowing such fact "executed the receipt in controversy, and upon its delivery to the defendant took and accepted $2,200," it must find for appellee.

The court, in this instruction, especially in the use of the words "should have known," has not used language fully in conformity with the rule laid down in the case of *Talbott* v. *English, supra,* for to prevent the creditor from recovering the entire sum which he claims to be due him, the debtor who pays him a smaller sum must indicate to the creditor that the sum paid to him is paid upon the condition that it shall be full payment of the claim, in such a manner that he is bound to understand the condition and has full knowledge of it. The debtor's duty is more than to make the condition so plain that one in the use of reasonable prudence and diligence would become aware of it. He must positively make the creditor understand it. The words "knew, or should have known," do not imply absolutely that the jury must find that appellant knew of the condition attached to appellant's payment, in order to find for appellee. However, in a later clause in the same instruction, the only one relating to the execution of the receipt, the court told the jury that to find for appellee, it must find that appellant, while knowing such fact (that appellee believed the notes were included in the settlement) executed the receipt and took $2,200. While not entirely approving the language

used in the instruction, yet we believe that, taken as a whole, the interpretation which would be placed on it by an ordinary man of fair intelligence would be, that appellant would not be prevented from recovering on the notes because of the settlement had, unless he knew that the payment was made on the condition that the notes were included in the settlement, and that the instruction did not mislead the jury.

Appellant, however, further contends, that if appellee believed and understood that he was settling the notes in suit, and if appellant knew that he believed that, yet
2.  if it were not made an express condition, and expressly agreed to by appellant, the settlement should not be interpreted in accordance with the belief of appellee. In this appellant is in error. Appellee's duty was only to cause appellant to know the condition attached to his payment, and that duty was fulfilled whenever appellant knew such condition. There is no specified manner in which appellee should have gone about informing appellant of the condition attached to his offer of payment. It is sufficient that he did in some manner by his acts and declaration bring such condition to appellant's knowledge, and if appellant accepted the money, knowing of the condition attached to its acceptance, he thereby became bound by that condition. The receipt signed by appellant, and the testimony of appellee, are evidence that he did so accept the money. We do not consider the giving of instruction five reversible error.

Appellant has scarcely argued the alleged error in the giving of instruction six, and it is sufficient to say that upon due examination we have found it applicable to the issues and the evidence.

No reversible error having been made to appear, the judgment is affirmed.