HARRIS v. G. M. H. WAGNER & SONS.
(No. 5858.)

(Court of Civil Appeals of Texas. San Antonio. May 9, 1917.)

1. BROKERS ⊜➜65(5)—PURCHASE FROM PRINCIPAL—RIGHT TO COMMISSION.

Under a contract providing that defendants were to pay plaintiff 85 cents a crate for all onions raised on 15 acres, to be paid when loaded, and after all advances, commissions, etc., have been deducted, "this instrument to in no way affect previous contract," there being no provision for commission for accepting onions bought, defendants were not entitled to 11 cents commission on each crate, although a previous independent contract for commission on sales from 25 acres so provided.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 50.]

2. CONTRACTS ⊜➜164—INDEPENDENT CONTRACTS—CONSTRUCTION.

Where the contract sued on was separate and distinct, a former contract should not be looked to in construing it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 746–748.]

3. BROKERS ⚙➳31—PURCHASE BY BROKER—CONSENT OF SELLER.

The law does not approve of a broker becoming the purchaser without the knowledge or consent of the seller.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 24.]

Appeal from District Court, Dimmit County; W. B. Hopkins, Judge.

Suit by C. O. Harris against G. M. H. Wagner & Sons. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Matt Cramer, of Asherton, and Ed H. Wicks, of San Antonio, for appellant. Mann & Henry, of Laredo, for appellees.

FLY, C. J. [1] The petition of appellant shows that he entered into a contract with Wagner & Sons on September 20, 1915, in which it was provided that, in consideration of certain money to be advanced and services rendered by said firm, the latter was appointed the exclusive agents to market and sell the entire crop of onions to be grown by appellant on his land, consisting of 25 acres, which he agreed to cultivate, furnishing therefor the plants, teams, and labor to harvest, grade, pack, and deliver the onions on the cars to appellees; that appellees agreed to market the onions, and, after deducting the advances, loans, crate money, and 11 cents a crate for commissions, to pay appellant the amount for which the onions are sold. There are other details not necessary to mention. The first contract is not the one declared upon, but the suit is based on a second contract, which is one of purchase. The second contract was dated April 11, 1916, over six months after the first contract was made, and provides for the sale of the onions on 15 acres of land. It is provided also that 85 cents a crate shall "be paid when onions are loaded on cars at Asherton, Tex., and after all advances, commissions, etc., have been deducted." It was alleged that appellant had delivered to appellees, under the second contract, 6,574 crates of onions, but that he had been paid only 74 cents a crate, 11 cents a crate having been retained by appellees as commissions for selling the onions to themselves. The suit is for the sum retained as commissions, amounting to $723.14, for an attorney's fee of $250, and for $1,000 deposited with the Asherton Bank, which, under the terms of the second contract, were to "remain there until contract has been fulfilled, or, in case it is proven that it is not fulfilled, to be given to C. O. Harris."

[2] The second contract is separate and distinct from the first, which was a contract for raising, gathering, and marketing the onions on 25 acres of land. The last contract was one of purchase alone of the onions on 15 acres of land. There is no provision for appellees to receive 11 cents a crate, over 12 per cent. of the total value, merely for accepting the onions which they had bought from appellee. In the second contract it is provided: "This instrument to in no way affect previous contract." If there was any doubt as to the last contract being independent of the former contract, that provision dispels it. It is a separate and distinct contract, totally different from the former one. It follows that the first contract should not be looked to in construing the second, as none of its provisions have any applicability to the provisions of the last contract. It may be presumed that there were other onions than those on the 15 acres to be marketed, and that the saving clause copied was placed in the contract to show that the brokers still had their rights under the first contract. The provision in the first contract that appellees, at Chicago, "shall have the privilege of buying from the Texas office upon an f. o. b. basis, upon equal terms with competing organizations or firms," would not be impaired by not permitting them to retain over 12 per cent. commissions, but, on the other hand, the retaining of that amount would give them an unconscionable advantage over other buyers.

[3] The law does not approve of a broker becoming the purchaser, without the knowledge or consent of the seller, but it would be permissible under a contract, and it was doubtless permissible under the terms of the first contract; but that would not justify the claim to commissions under a separate and distinct contract, in which no provision is made for commissions. As said in Texas Brokerage Co. v. Barkley, 49 Tex. Civ. App. 632, 109 S. W. 1001, speaking of brokers becoming purchasers:

"If they purchased for themselves, of course they are not entitled to the commission claimed. If they did not purchase for themselves, but were merely acting as brokers for the appellees in the sale of sugar to other parties, then they would be entitled to the commission. These items are based upon two inconsistent theories, and the establishment of either one by the evidence would destroy the right to recover under the other."

The same case on another appeal is reported in 60 Tex. Civ. App. 466, 128 S. W. 431, where the same ruling was made.

Believing, as we do, that there is no real connection between the two contracts, we fail to see the reason for mentioning the first contract in the petition, although it was done. The first contract showed the relation of broker and seller existing between appellant and appellees, but that relation was clearly destroyed as to the onions grown on the 15 acres of land, and the relation of seller and buyer was established. If anything was to be obtained by appellees from the first contract, it rested on them to plead it.

We are of the opinion that the petition was good as against a general demurrer, and the judgment will be reversed and the cause remanded.

⚙➳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes