## G. M. H. WAGNER & SONS v. HARRIS.
### (No. 6112.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 18, 1918. Rehearing Denied Jan. 15, 1919.)

1. ACCORD AND SATISFACTION &#x21DD;1 — WHAT CONSTITUTES.

When a statement is received by one party to a controversy from the other, showing the balance due, and payment of that balance is accepted, it constitutes "accord and satisfaction," and is settlement of the claims between the parties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accord and Satisfaction.]

2. ACCORD AND SATISFACTION &#x21DD;1 — WHAT CONSTITUTES.

In an action to recover from defendants commissions which they had retained as brokers for effecting a sale, etc., held, that plaintiff's acceptance of a payment by defendant, with which was sent a statement of the accounts between the parties, constituted an accord and satisfaction, precluding plaintiff's subsequent recovery.

Appeal from District Court, Dimmit County; J. F. Mullally, Judge.

Action by C. O. Harris against G. M. H. Wagner & Sons. From a judgment for plaintiff, defendants appeal. Reversed and rendered.

T. C. Mann, of Laredo, for appellants.
Matt Cramer, of Bay City, for appellee.

FLY, C. J. This is a second appeal of this case; the result of the first being reported in 195 S. W. 351. A second amended

---

petition was filed after the cause reached the district court. In the original pleadings, as stated in the opinion on the former appeal, it was sought by the present appellee to recover, not only the sum of $723.14 commissions which appellants herein had held out on a sale by them, as brokers, to themselves, but also an attorney's fee for $250, and $1,000 deposited by appellants with the Asherton Bank, which was to be forfeited to appellee if the contract for the sale of the onions was not performed. By the amended pleadings, on which the last trial was had, appellee sought to recover the commissions, amounting to $768.04, and, in the alternative, the $1,000 forfeit money. The cause was tried by the jury, resulting in a verdict and judgment in favor of appellee for $723.14.

[1, 2] Appellants pleaded accord and satisfaction, and the uncontroverted facts show that there was a controversy between the parties as to how much appellants owed appellee on the sale of his onions; the former claiming a right to certain commissions, and the latter denying that right. Appellants claimed that they sent a statement of the account between themselves and appellee, together with a check for the balance due appellee, and that appellee accepted the same and cashed the check, and that he is thereby estopped from claiming any further sum. This is the statement of appellee:

"On May 20th I received a letter and statement from Wagner & Sons, and also a check. I have the statement they sent me. I looked over it when I received it. That statement showed $4,150 advanced, but that included payments made me along on shipments. I think the amount is correct. This statement which was sent me advised me of the number of crates in each car and the price and all. I checked over the statement at the time, and I think it checked out all right. I had a talk with Murl O'Keefe soon after getting the statement; I think it was the next day. I suppose I got this statement about May 21st. Murl O'Keefe called me over the telephone from the bank at Asherton. I received a letter with that statement. The copy you have shown me, I think, is a copy of the letter I received. It is my recollection that it was right after I received the letter and statement, that day or the next day, that Murl O'Keefe called me over the telephone. I know I thought he was rushing things pretty badly. I did not reply to that letter and statement, except over the telephone to Murl O'Keefe. I never answered it at all. Murl O'Keefe just called me up and asked me to release that $1,000, and I told him I would not do it; that he had not complied with the contract and I would not release it. This talk was right after I received said statement. I think it was the 21st or the 22d. The statement showed one car was out and what car it was. * * * After that, I got another statement for the last car; I do not remember how much money was in that. I received the check that was sent with the letter of May 20th, for $2,000, and cashed it, and I kept the money. I did not reply to those letters. They happened up on the tele-phone just about the time I got that letter, and it was not necessary."

The first check was for $2,030.32 and the last was for $139.36, and both were cashed by appellee. Appellee did not reply to the letters containing the checks, but in a conversation over the telephone he refused to release the $1,000 forfeit; the ground of refusal not being caused by the commissions being reserved, but because appellants had failed to receive certain onions, their office being closed before the onion harvest was over.

It is the settled rule that, when a statement is received by one party to a controversy from the other, that statement showing the balance due, and payment of that balance is accepted, it constitutes accord and satisfaction, and is a settlement of the claims between the two parties. In other states it has been held that where a debtor sends a certain sum in full satisfaction of an unliquidated demand, and the creditor accepts and retains the money, his claim is canceled, and no protest, declaration, or denial on his part, so long as the condition is insisted on by the debtor, can vary the result. Elliott on Contracts, § 2078; Hamilton v. Stewart, 105 Ga. 300, 31 S. E. 184; Hull v. Johnson, 22 R. I. 66, 46 Atl. 182; Wilson v. Wilson, 49 Ind. App. 109, 96 N. E. 791; Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785.

In the New York case, last cited, it was said:

"It is of no significance in this case that the remittance was by check. Both parties treated it as money, and upon the receipt of this letter the plaintiff had but a single alternative presented for his action—the prompt restoration of the money to his debtor or the complete extinguishment of the debt by its retention. The tender and the condition could not be dissevered. The one could not be taken and the other rejected. The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction. Under such circumstances the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of his act."

The condition clearly expressed in the letters accompanying the statements and checks was that acceptance would be full payment. In the first letter appellants said:

"We are inclosing statement to cover everything shipped by you, except the one car of wax seconds which was consigned, and on which we had no report. * * * We trust that you will find the statement correct in every way. If not, please advise."

He did not advise.

In the second letter was the statement as to the car of "wax seconds," and in that letter it was said:

"This, we believe, settles with you in full, and we would request that you instruct the bank to release the $1,000 deposited to guarantee fulfillment of our contract with you."

It is suggestive that appellee, directly after the time he cashed the checks, made no objection whatever to the charge for commissions; his only objection was that appellants had not been at their office, so he could deliver certain onions to them. The statements sent with the checks showed the deduction of 11 cents per crate as 'commissions, but no objections were urged to that charge. The law as herein set forth is sustained by Texas decisions. Stetson v. Dodson, 103 S. W. 685; Hunt v. Ogden, 58 Tex. Civ. App. 443, 125 S. W. 386; Hollinger v. Granite Co., 173 S. W. 603.

Under our view of the case, it becomes unnecessary to discuss the different assignments of error. The matter we have considered is fully decisive of the case.

The judgment is reversed, and judgment here rendered, that appellee recover nothing by his suit and pay all costs in this behalf expended.

